UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LEE MEMORIAL HEALTH SYSTEM,

    Plaintiff,

v.                                    Case No. 8:16-cv-02320-JSM-AAS

BLUE CROSS AND BLUE SHIELD OF
FLORIDA, INC., AND HORIZON
HEALTHCARE SERVICES, INC.
D/B/A BLUE CROSS BLUE SHIELD OF NEW
JERSEY, HORIZON BLUE CROSS BLUE
SHIELD OF NEW JERSEY AND HORIZON
BCBSNJ

    Defendants.

_____/

## RESPONSE IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS COMPLAINT

Plaintiff, Lee Memorial Health System ("Lee Memorial"), by and through its undersigned counsel and pursuant to 28 U.S.C. §§1331 and 1447 and Fed. R. Civ. P. 12(b), files this response in opposition to Defendants' Motion to Dismiss Complaint filed by defendants, Blue Cross and Blue Shield of Florida, Inc. ("BCBSF") and Healthcare Services, Inc. d/b/a Blue Cross Blue Shield of New Jersey, Horizon Blue Cross Blue Shield of New Jersey and Horizon BCBSNJ ("BCBSNJ") (collectively BCBS"), and states the following:

### STATEMENT OF FACTS

Lee Memorial is a public health care system in Lee County, Florida. On October 1, 1985, it entered into a Preferred Patient Care Hospital Agreement ("Agreement") with BCBSF whereby, in consideration of payment by BCBSF in accordance with the Agreement, Lee

1

Memorial would provide hospital services to policyholders of BCBSF. *See* Affidavit of Anne Rose ("Rose Aff."), filed contemporaneously, at ¶5.

Under the Twentieth Amendment to the Agreement, BCBSF is to pay Lee Memorial in accordance with negotiated rates if Lee Memorial provides covered services to a policyholder of a "sister Blue Cross and/or Blue Shield Plan" ("sister Plan"), described as a "Plan [organized as] an independent corporation operating under a license or sub-license with the Blue Cross and Blue Shield Association."[1] *Id.* at ¶8. Information concerning the reimbursement, if any, paid to BCBSF by any sister Plan on account of hospital services provided by Lee Memorial to a policyholder of a sister Plan is not shared by BCBSF with Lee Memorial. *Id.* at ¶9.

Heather Picardi ("Picardi"), a sister Plan policyholder, was admitted to Lee Memorial for complications from her pregnancy. *See* Affidavit of Patricia O'Brien ("O'Brien Aff."), filed contemporaneously, at ¶5. On May 26, 2011 Picardi's son was born prematurely. *Id.* at ¶6. Lee Memorial provided hospital services to the newborn who required extensive specialized medical treatment to survive. *Id.* at ¶7. Lee Memorial obtained authorization from BCBSF for those hospital services in accordance with the Agreement. *Id.* at ¶8. Lee Memorial did not, however, obtain a written assignment of benefits for treatment provided to the newborn. *Id.* at ¶9.

Payment to Lee Memorial for the hospital services provided to the newborn was ultimately denied based upon an alleged failure to timely coordinate benefits between two sister Plans for which the newborn was a covered dependent. *Id.* at ¶¶11, 15. Specifically, BCBSF contended that the newborn was a covered dependent of a sister Plan for which Picardi was a member and (unbeknownst to Lee Memorial at the time of admission) was also a covered

---

[1] In this regard, the Twentieth Amendment to Agreement entered into on December 9, 2008 states:

> It is further agreed that [BCBSF] is entitled to treat individuals covered through [sister] Plans (i.e. each Plan an independent corporation operating under a license or sub-license with the Blue Cross and Blue Shield Association) as Policyholders under this Agreement.

dependent of a separate sister Plan for which the father was a member. *Id.* at ¶12. According to BCBSF, Lee Memorial's claim form should have identified the father's Plan which provided primary coverage, but the claim form mistakenly identified the mother's Plan which provided secondary coverage. *Id.* at ¶13. Lee Memorial was not made aware of this by BCBSF, however, until after numerous and extensive errors and delays by BCBSF in processing the claim form and material misrepresentations and omissions by BCBSF that are described with particularity in paragraphs 16-24 of the complaint. *Id.* at ¶14. In fact, BCBSF ultimately notified Lee Memorial that, because of the extensive delays that had occurred in the processing of the claim by BCBSF and/or its sister Plan, it was too late for Lee Memorial to correct the claim form in order to identify the father's sister Plan which BCBSF deemed to be primary. *Id.* at ¶15.

Coordination of benefits is dealt with extensively in the Agreement and its amendments as well as in hospital provider manuals given to the hospitals in the BCBSF network in order to provide guidelines and requirements for processing and payment of claims in a managed care setting. *See Rose* Aff. at ¶10. Lee Memorial relies upon BCBSF to administer such guidelines and requirements relating to coordination of benefits so as to fulfill Lee Memorial's reasonable expectation to be paid for providing covered services to the subscribers of BCBSF and any of its sister Plans. *Id.* at ¶11. Lee Memorial has sustained damages on account of the failure of BCBSF to properly discharge its legal duties under the Agreement and Florida law and/or the failure of a sister Plan to properly discharge such duties delegated to it by BCBSF.

Based upon the foregoing, Lee Memorial filed its complaint in state court against the defendants, BCBSF and BCBSNJ. In the complaint, Lee Memorial alleges as follows:

1. Count I for an order declaring the rights and liabilities of all of the parties under the Agreement, as amended, for payment of the medical services described above;

2. Count II for breach of the Agreement by BCBSF;

3. Count III for promissory/equitable estoppel against BCBSF and BCBSNJ for repeated misrepresentations to Lee Memorial that coverage for the hospital services provided to the newborn had been accepted and that the claim would be paid;

4. Count IV for negligent misrepresentation by BCBSF and BCBSNJ as a consequence of false statements of material fact that coverage for the hospital services had been approved and that payment would be forthcoming, when, in fact, the defendants failed to conduct a reasonable and timely investigation of Lee Memorial's claim for payment and to promptly notify Lee Memorial as to any policy defenses, coverage exclusions, or other matters affecting the ability of Lee Memorial to ultimately receive payment for covered claims;

5. Count V against BCBSF for breach of its fiduciary duty under the Agreement for:

   a) Failing to timely authorize medical care for the newborn;

   b) Failing to timely process payment claims for the medical care;

   c) Misinforming Lee Memorial as to the eligibility of the newborn to receive covered services at Lee Memorial;

   d) Wrongfully refusing to pay claims for covered services; and

   e) Denying claims for covered services in order to advance the financial interests of BCBSF and BCBSNJ to the detriment of Lee Memorial;

6. Count VI for unjust enrichment against BCBSF and BCBSNJ; and

7. Count VII for breach of implied covenants of good faith and fair dealing against BCBSF under the Agreement.

In the complaint, Lee Memorial sues in its independent capacity as a third party health care provider and not as an assignee of the benefits of the beneficiary of a health plan. In fact,

Lee Memorial does not have an assignment of benefits in this case and, therefore, could not sue in a derivative capacity if it wanted to do so. *See O'Brien* Aff. at ¶¶9 - 10. The complaint does not allege any causes of action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

BCBSF and BCBSNJ filed their joint notice of removal on August 12, 2016 on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331. Lee Memorial has filed its Motion for Remand on which it also relies in this response.

## **DISCUSSION**

"Whether a federal question appears must ordinarily be determined on the face of the plaintiff's well-pleaded complaint." *S. Fla. Ear, Nose and Throat, PLLC v. Blue Cross Blue Shield of Fla., Inc.*, No. 2:13–cv–178–FtM–29UAM, 2013 WL 6332968, at *2 (M.D. Fla. Dec. 5, 2013) (contract claim remanded). *See also Miami Beach Cosmetic and Plastic Surgery Ctr. v. Blue Cross Blue Shield of Fla., Inc.*, 947 F. Supp. 2d 1375, 1379 (S.D. Fla. 2013) (oral contract between provider and insurer, BCBSF, remanded).

### A. Complete Preemption

In the case of ERISA, however, the doctrine of complete preemption is a judicially-recognized exception to the well-pleaded complaint rule. *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1344 (11th Cir. 2009); *Riverside Med. Assocs. v. Humana, Inc.*, No. 06-61490-CIV-COHN, 2006 WL 3827541, at *2 (S.D. Fla. Dec. 28, 2006). BCBSF and BCBSNJ bear "the burden of demonstrating complete preemption and, where jurisdiction is not absolutely clear, the Eleventh Circuit favors remand." *See Sheridan Healthcorp, Inc. v. Aetna Health Inc.*, No. 15–cv–62590–BLOOM/Valle, 2016 WL 490264, at *3 (S.D. Fla. Feb. 9, 2016) (granting motion to remand). "In meeting its burden, a defendant

must provide facts justifying removal." *Id.* (citing *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1242 (11th Cir. 2001) (remanding where health insurer failed to provide proof). BCBSF and BCBSNJ have not and cannot meet their burden of demonstrating preemption.

Two elements are required for complete preemption: 1) the plaintiff must have been able to bring its claim under ERISA § 502(a); and (2) there can be no other legal duty that supports the plaintiff's claim. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004). *See also Conn. State Dental Ass'n.*, 591 F.3d at 1345.[2] *Davila's* two prong test is the appropriate standard to be applied in this case for determining if the Florida Circuit Court is completely preempted from deciding this case. *See, e.g., Conn. State Dental*, 591 F.3d at 1344 – 1345. Here, neither prong of the *Davila* test is met.

### 1. Lee Memorial is not able to bring its claim under ERISA.

The first prong of the *Davila* test is not satisfied here because Lee Memorial brings this action in its independent capacity as a third party health care provider and not in a derivative capacity as an assignee of a health plan beneficiary. "[H]ealthcare provider claims are usually not subject to complete preemption because "[h]ealthcare providers ... generally are not considered 'beneficiaries' or 'participants' under ERISA." *Mitchell-Hollingsworth Nursing & Rehabilitation Ctr., LLC v. Blue Cross Blue Shield of Mich.*, 919 F.Supp. 2d 1209, 1217 (N.D. Ala. 2013) (emphasis in original) (citing *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1241 (11th Cir. 2001) and *Conn. State Dental*, 591 F.3d at 1346 – 1347.

---

[2] Several cases cited by BCBSF and BCBSNJ were decided before *Davila*. *See, e.g., Garren v. John Hancock Mut. Life*, 114 F.3d 186, 187 (11th Cir. 1997); *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1215 (11th Cir. 1999); *Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 187 (4th Cir. 2002).

Lee Memorial does not have a written assignment of ERISA benefits. In the absence of an assignment, "ERISA only provides a cause of action for plan participants and beneficiaries." *See McLachlan v. La. Health and Indem. Co.*, No. CIV.A. 02-0424, 2002 WL 1461885, at *2 (E.D. La. July 3, 2002). A written assignment of ERISA benefits is "unequivocally" required before a health care provider has standing to pursue an ERISA claim. *See Riverside Med. Assocs.*, 2006 WL 3827541, at *2. *See also Hobbs*, 276 F.3d at 1241.

In an apparent attempt to clear such a hurdle, the defendants filed an affidavit stating that the electronic claim form Lee Memorial submitted was coded in a manner consistent with a provider having an assignment of benefits. Regardless, a claim form is not an assignment of benefits; Lee Memorial has filed the affidavit of the director of its business office attesting that, based upon a diligent investigation, Lee Memorial has determined that it never obtained an assignment of benefits. *See* O'Brien Aff. at ¶10. A similar case flatly rejected a health plan's attempt to utilize a claim form to prove that a medical provider had obtained an assignment of ERISA benefits and, therefore, had standing under ERISA. *See Riverside Med. Assocs.*, 2006 WL 3827541, at *2. That case reasoned that "the Court must give Plaintiff the benefit of the doubt as to whether these forms can be considered assignments of benefits from the patients to Plaintiff, particularly where Defendant bears the burden of showing federal subject matter jurisdiction upon removal." *Id.* Defendants' argument is even less compelling here in that, unlike *Riverside Med.*, the record here includes an affidavit confirming that no assignment exists.

### 2. There are other legal duties that support Lee Memorial's claims.

Even if the defendants had succeeded in meeting their burden of showing that Lee Memorial had an assignment of ERISA benefits, clearly not the case here, the mere acceptance of an assignment of benefits by a provider does not equate to forfeiture of claims arising

7

independently of ERISA. *Id. See also Lordman, Ent., Inc. v. Equicor, Inc.*, 32 F.3d 1529 (11th Cir. 1994); *Mitchell-Hollingsworth Nursing & Rehabilitation Ctr., LLC,* 919 F. Supp. 2d at 1217. Claims that arise either out of a provider's independent agreement with a defendant or out of independent actions undertaken by a defendant are not preempted even if the provider has obtained an assignment of ERISA benefits. *Id.*

The second prong of the *Davila* test is not satisfied in this case because Lee Memorial's claims are based upon independent legal duties arising under the Agreement and Florida law:

> [H]ealthcare provider claims are usually not subject to complete preemption because... such claims often are not the type of claims that could be brought under § 502(a) because they do not "duplicate[ ], supplement [ ], or supplant [ ] the ERISA civil enforcement remedy." *Davila,* 542 U.S. at 209, 124 S.Ct. at 2495. For example, *a healthcare provider's claims of negligent misrepresentation and estoppel based on a plan's oral misrepresentations are not ERISA claims because they do not arise from the plan or its terms. Franciscan Skemp [Healthcare, Inc. v. Central States Joint Board Health and Welfare Trust Fund* ], 538 F.3d [594,] 597 [ (7th Cir.2008) ].

*Id.* (emphasis in original) (also citing *Conn. State Dental,* 591 F.3d at 1346 - 1347 in granting remand of breach of express contract, breach of implied contract, negligence/wantonness, fraud/misrepresentation/suppression of material facts, promissory fraud, equitable/promissory estoppel, quantum meruit, unjust enrichment, conspiracy and conversion claims). *See also Evans v. Infirmary Health Servs., Inc.*, 634 F.Supp.2d 1276 (S.D. Ala. 2009) (granting remand because the "complaint[, as here,] expressly hinged [the] requested declaratory judgment and contract-based relief upon terms of agreement, rather than employer's ERISA-qualifying ... policy").

> [W]here [, as here,] state law causes of action make no reference to ERISA and function irrespective of federal statute, they will not be preempted. [Citation omitted]. As the Eleventh Circuit has observed, "the mere existence of an ERISA plan is not enough for preemption." [Citation omitted].

*Sheridan Healthcorp,* 2016 WL 490264, at *6. "Both the Seventh Circuit and the Eleventh Circuit acknowledge that the nature of the claims pled in the plaintiff's complaint controls the

ERISA pre-emption analysis..." *Mitchell-Hollingsworth Nursing & Rehabilitation Ctr., LLC,* 919 F.Supp. 2d at 1220.

The complaint here clearly alleges actions under state law which are independent of ERISA. Lee Memorial seeks an award of damages based upon its state law causes of action and does not seek a judicial determination of its "right to payment" under an ERISA benefits plan. *Id.* at 1221. *See also Franciscan Skemp Healthcare, Inc.,* 538 F.3d at 598 (a plaintiff's mention of " 'covered services' in...[the] complaint does not convert its breach of contract claim into one for denial of plan benefits"). The defendants have simply failed in their burden of establishing complete preemption in this case. *See Sheridan Healthcorp,* 2016 WL 490264, at *6 (breach of contract and declaratory relief); *Lamonica v. Brown Nursing Home, LLC,* No. 3:15cv326-SRW, 2015 WL 9008449, at *6 (M.D. Ala. Dec. 15, 2015) (misrepresentation and others); *S. Fla. Ear, Nose and Throat,* 2013 WL 6332968, at *2 (breach of contract); *Miami Beach Cosmetic,* 947 F. Supp. 2d at 1379 (breach of contract); *Variety Children's Hosp., Inc. v. Blue Cross/Blue Shield of Fla.,* 942 F. Supp. 562, 567 (S.D. Fla. 1996) (holding that, as to a claim based upon promissory estoppel by a hospital as a third-party healthcare provider and not as an assignee of ERISA benefits, preemption "would stretch the 'connected with or related to' standard too far"); *Mitchell-Hollingsworth Nursing & Rehabilitation Ctr.,* 919 F. Supp. 2d at 1209 (breach of express contract, negligence/wantonness, fraud/misrepresentation/suppression of material facts, equitable/promissory estoppel, and unjust enrichment, among others); *Tulsa Specialty Hosp., LLC v. Boilermakers Nat'l Health & Welfare Fund,* No. 12-CV-252-GKF-FHM, 2012 WL 2887513, at *4 (N.D. Okla. July 13, 2012) (misrepresentation).

**B.    Defensive Preemption**

Conflict preemption, also known as defensive preemption, is a substantive defense to preempted state law claims. *Jones v. LMR Int'l, Inc.,* 457 F.3d 1174,

9

1179 (11th Cir.2006). This type of preemption arises from ERISA's express preemption provision, § 514(a), which preempts any state law claim that "relates to" an ERISA plan.[4] 29 U.S.C. § 1144(a). Because conflict preemption is merely a defense, it is not a basis for removal. [Citations omitted].

*Conn. State Dental Ass'n.*, 591 F.3d at 1344. "[W]hen an action has been removed from state court and the district court subsequently loses its basis for original jurisdiction, in most instances the action must be remanded to the state court." *Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 196 (4th Cir. 2002) (cited by defendants). Because defensive preemption does not appear on the face of a complaint, it "does not authorize removal to federal court." *Id.* at 187 (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)).

Because this case is not completely preempted and this court does not have federal question jurisdiction, it must be remanded without deciding the issue of defensive preemption.

> There can be no federal question jurisdiction or removal based on an argument raised by the defense, whether that argument is a defense or a counterclaim. *See Ervast v. Flexible Prods. Co.*, 346 F.3d 1007, 1012 (11th Cir. 2003) ( "[U]nless the face of a plaintiff's complaint states a federal question, a defendant may not remove a case to federal court on this basis, even though a possible defense might involve a federal question.") ... .

*Bank of N. Y. v. Angley*, 559 Fed.Appx. 956, 957 (11th Cir. 2014). Claims not completely preempted "are not properly removed and must be remanded." *Ervast*, 346 F.3d at 1014.

Lee Memorial's causes of action are, however, also not defensively preempted. As one case cited by the defendants held, the Supreme Court has made clear

> that many "lawsuits against ERISA plans for run-of-the-mill state-law ... torts committed by [the] ERISA plan" are not preempted, even though these suits "obviously affect[ ] and involv[e] ERISA plans and their trustees." [Supreme Court citation omitted]. We conclude, therefore, that the simple fact that a defendant is an ERISA plan administrator does not automatically insulate it from state law liability for alleged wrongdoing against a plan participant or beneficiary

10

*Darcangelo*, 292 F.3d at 191 – 192 (also citing *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974 (9th Cir.2001) (holding that an action for invasion of privacy was not a preempted state tort claim even though it was asserted by an ERISA beneficiary against a plan administrator).

29 U.S.C. § 1144(a) provides, with certain exceptions not relevant here,

> that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to any employee benefit plan.*" *Id.* (emphasis added). The critical statutory phrase—"relate to any employee benefit plan"—is not, however, self-defining, and the Supreme Court "[has] been at least mildly schizophrenic in mapping its contours." [Citation omitted].

*Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 773 (7th Cir. 2002). Care must be taken not to preempt matters defensively which Congress did not intend to be preempted. "A state-law claim is not expressly preempted under § 1144(a) merely because it requires a cursory examination of ERISA plan provisions." *Id.* at 780 (quoting *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1472 (4th Cir.1996)). "[T]he preemptive power of ERISA is not without limit;" " '[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan.' " *Campbell v. Aerospace Corp.*, 123 F.3d 1308 1311 (9th Cir. 1997) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983)). The Supreme Court, which originally took a very expansive view of what is related to an ERISA claim, has in recent years "taken a more restrictive view of § 1144(a)." *Biondi*, 303 F.3d at 773.

> The tide began to turn in this direction with the seminal decision of *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), where the Court emphasized that:
>
> > Our past cases have recognized that the Supremacy Clause, U.S. Const., Art. VI, may entail pre-emption of state law either by express provision, by implication, or by a conflict between federal and state law. And yet, despite the variety of these opportunities for federal pre-emption, we have never assumed lightly that Congress has derogated state regulation, but instead

11

> have addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law. Indeed, in cases like this one, where federal law is said to bar state action in fields of traditional state regulation, we have worked on the "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."

*Id.* at 654–55, 115 S.Ct. 1671 (internal citations and citation omitted).

> ... In addressing the "clearly expansive" text of § 1144(a), *the Court concluded that if the statute's "words of limitation"—i.e., "relate to"—"were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes preemption would never run its course, for 'really, universally, relations stop nowhere.'"* *Id.* (citation omitted). The Court also noted that its prior attempt to place some meat on § 1144(a)'s bare bones in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), where it held that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a *connection with or reference to* such a plan," *id.* at 96–97, 103 S.Ct. 2890 (emphasis added), was of limited utility because "an uncritical literalism [of the phrase "connection with"] is no more help than in trying to construe 'relate to' ... [f]or the same reasons that infinite relations cannot be the measure of pre-emption, neither can infinite connections." *Travelers*, 514 U.S. at 656, 115 S.Ct. 1671. For this reason, the Court in *Travelers* decided to add another layer to its ERISA preemption analysis, holding that, for purposes of § 1144(a), a federal court's evaluation of a state law's relation to an employee benefit plan must "go beyond the unhelpful text and the frustrating difficulty of defining its key term, and *look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.*" *Id.* (emphasis added).

*Id.* at 773 – 774 (additional emphasis added).

> ERISA's primary objectives are to "protect ... the interests of participants ... and their beneficiaries, by requiring the disclosure and reporting ... of financial and other information ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts," 29 U.S.C. § 1001(b), and "by improving the equitable character and the soundness of such plans by requiring them to vest the accrued benefits of employees with significant periods of service, to meet minimum standards of funding, and by requiring plan termination insurance." 29 U.S.C. § 1001(c). Additionally, we know that when Congress enacted § 1144(a) it intended:
>
>> to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government ..., [and to prevent] the potential for

> conflict in substantive law ... requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.

*Travelers*, 514 U.S. at 656–57, 115 S.Ct. 1671. [Citation omitted].

> Under this rubric, the Supreme Court has identified at least three instances where a state law can be said to have a "connection with" or "reference to" employee benefit plans, when it (1) "mandate[s] employee benefit structures or their administration," *Travelers*, 514 U.S. at 658, 115 S.Ct. 1671; (2) binds employers or plan administrators to particular choices or precludes uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself, *id.* at 659–60, 115 S.Ct. 1671; and (3) provides an alternative enforcement mechanism to ERISA. *Id.* at 658, 115 S.Ct. 1671.

*Id.* at 774 – 775. Nowhere does the Agreement or Lee Memorial's causes of action (1) mandate employee benefit structures or their administration, (2) bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself, or (3) provide an alternative ERISA enforcement mechanism.

Contrary to the defendants' statement, *see* Motion to Dismiss Complaint at 20 (citing *Egelhoff v. Egelhoff ex rel Breiner*, 532 U.S. 141, 150, 121 S.Ct. 1322, 1324-25, 149 L.Ed.2d 264 (2001)), Lee Memorial's claims do not "conflict with ERISA's requirements that plans be administered and benefits be paid, in accordance with plan documents." A tangential effect on an ERISA relationship does not mean that a claim is related for preemption purposes. As the Eleventh Circuit would hold in a case cited by the defendants, Lee Memorial "may choose to exclusively pursue [its] state law claims in state court, even against the backdrop of another set of potentially preempted claims." *Borrero v. United Healthcare of N. Y., Inc.*, 610 F.3d 1296, 1303 (11th Cir. 2010). Eleventh Circuit case law supports the conclusion that Lee Memorial's claims are not defensively preempted.

In *Ervast*, 346 F. 3d 1007, the Eleventh Circuit reversed a denial of a motion to remand and held that state law claims for breach of corporate fiduciary duty and negligence for failure to

communicate material information respecting two ERISA plans are not preempted by ERISA. The Court reached that conclusion because the relief which the plaintiff sought was not akin to the relief available under ERISA, 29 U.S.C. § 1132(a), and, also as here, was not based on the parties' roles as participants in an ERISA plan. *Ervast*, 346 F. 3d at 1014 – 1016.

In *Morstein v. Nat'l Ins. Servs., Inc.*, 93 F.3d 715 (11th Cir. 1996), the Eleventh Circuit again held that a denial of a motion to remand was improper. The Court reversed summary judgment for defendants and held that state law claims against an independent insurance agent and his agency for fraudulent inducement to purchase and negligence in processing an application for an ERISA-governed insurance plan were not preempted because the state law claims did "not affect relations among principal ERISA entities as such." Id. at 722. Because the insurance agent and his agency were not ERISA entities and the claims did "not fall within ERISA's broad preemptive scope," they did "not have a sufficient connection with the plan to 'relate to' the plan." *Id.* at 722 – 724. The Court reached that conclusion even though "the remedy sought may affect the plan in that [the plaintiff's damages] may be measured based on what she would have received under her old plan, [because] such indirect relation between a beneficiary and the plan is not enough for preemption." *Id.* at 723. Likewise, the mere fact that Lee Memorial's damages in this case "may affect the plan"(s) does not preempt Lee Memorial's claims.

In *Biondi*, the Seventh Circuit distinguished *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S. Ct. 478, 112 L. Ed. 2d 474 (1990), a case cited by defendants, from the instant case. The state law in *Ingersoll–Rand*, a judicially created cause of action for wrongful discharge, made " 'specific reference to, and indeed is premised on, the existence of a pension plan,' " making the judicially created cause of action expressly preempted by ERISA. *Biondi*, 303 F. 3d

at 777 (quoting *Ingersoll–Rand*, 498 U.S. at 140). *Biondi* then held that there is "a key difference between the cause of action at issue in *Ingersoll–Rand* and the Trustees' claim against Biondi" for fraudulent concealment of his divorce and misrepresentation that he was still married to his ex-wife, so that the fund would continue to provide his ex-wife with coverage.

> In *Ingersoll–Rand,* the Court held that the common law cause of action created by the Supreme Court of Texas was "specifically designed" to affect employee benefit plans because it only " 'allows recovery when the plaintiff proves that the principal reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund.' " *Id.* (citation omitted). *In contrast, Illinois's common law tort of fraudulent concealment, a traditional state-based law of general applicability* [Citation omitted] *clearly makes no direct reference to ERISA plans nor relies on the existence of such plans to operate.* This is an important distinction because in *Ingersoll–Rand* the Court specifically noted that it was "not dealing ... with a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan." *Ingersoll–Rand,* 498 U.S. at 139, 111 S.Ct. 478. Thus, when the Supreme Court describes *Ingersoll–Rand* as a case "where the existence of a pension plan [was] a *critical element* of a state-law cause of action," *De Buono,* [*v. NYSA–ILA Med. & Clinical Services Fund,* 520 U.S. 806, 815, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997)] (emphasis added), or one where "a common law cause of action [was] premised on the existence of an ERISA plan," [*California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.,* 519 U.S. 316, 324 – 325, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997)] it is referring to a claim where the state law at issue relied, for its very operation, on a direct and unequivocal nexus with ERISA plans. *Id.* at 325, 117 S.Ct. 832.

*Biondi,* 303 F. 3d at 777 – 778. As *Biondi* concluded, the plaintiffs' common law "claim, which seeks to advance the rights and expectations created by ERISA, is not preempted simply because it may have a tangential impact on employee benefit plans.... [because it] does not rely on the pension plan's operation or management." *Id.* at 780. The same rule applies here.

The Eleventh Circuit in *Borrero*, also cited by the defendants, held that practices "based on independent provider-insurer contracts ... do not implicate ERISA." *Borrero,* 610 F.3d at 1304 – 1305. All of Lee Memorial's causes of action are distinct from claims which can be made under ERISA, and its "complaint is not substantially dependent upon interpretation of" an

15

ERISA agreement. *Id.* at 1303 (citing *Caterpillar Inc. v. Williams,* 482 U.S. 386, 395, 107 S.Ct. 2425, 2431, 96 L.Ed.2d 318 (1987)). "*Caterpillar* demonstrates that plaintiffs may choose to exclusively pursue their state law claims in state court, even against the backdrop of another set of potentially preempted claims." *Borrero,* 610 F.3d at 1303.

*Darcangelo,* cited by the defendants, held that "ERISA, as its goals indicate, does not seek to preempt all state laws that might apply to an ERISA plan administrator, but only those laws that undermine the 'nationally uniform *administration* of employee benefit plans.' " *Darcangelo,* 292 F.3d at 194 (emphasis in original) (quoting *Travelers,* 514 U.S. at 657). While a breach of contract claim that was founded upon a breach of the terms of an ERISA plan, not the case here, was preempted in *Darcangelo,* "four state claims for invasion of privacy, negligence, unfair and deceptive trade practices, and medical privacy violations are not." *Id.* at 195. *See also Miami Children's Hosp., Inc. v. Kaiser Found. Health Plan, Inc.,* 2009 WL 1532125, *5 (S.D. Fla. May 29, 2009) (cited by the defendants and holding that a claim for promissory estoppel should not be dismissed despite ERISA preemption of other Counts in a complaint).

### C. Plaintiff Has Pleaded Claims Under Florida Law.

Because this case is not completely preempted and this court does not have federal question jurisdiction, it must be remanded without deciding whether Lee Memorial has pled Florida causes of action. Even so, Lee Memorial has pled the elements of its causes of action necessary to put the defendants on notice under of Fed.R.Civ.P. 8.

#### 1. Promissory/Equitable Estoppel and Negligent Misrepresentation

Lee Memorial has pled the elements of promissory estoppel: (1) detrimental reliance on the defendants' promise to Lee Memorial (*see* Complaint at ¶¶18, 20 - 22, 41); (2) defendants reasonably should have expected their promise to induce reliance in the form of action or

forbearance by the plaintiff because (a) the Agreement indicated that the medical services provided to the newborn would be covered, (b) Lee Memorial submitted claims to BCBSF and (c) the defendants repeatedly led Lee Memorial to understand that the claims would be paid (*id.* at ¶¶11, 15, 18, 20 - 22, 41); and (3) injustice can be avoided only by enforcement of the promise, in this case because, despite the defendants' promises and misrepresentations, Lee Memorial has not been paid and has no further administrative appeals (*id.* at ¶¶23, 24, 43, 44). *Morse, LLC v. United Wis. Life Ins. Co.*, 356 F.Supp.2d 1296, 1300 (S.D. Fla. 2005).

Lee Memorial has also specifically pled the elements of negligent misrepresentation, i.e. (1) misrepresentations of material facts (*see* Complaint at ¶¶18, 20 - 22, 41); (2) the defendants either knew of the misrepresentations, made them without knowledge of their truth or falsity, or should have known they were false (*id.* at ¶¶18, 20 - 23, 47, 48); (3) the defendants intended to induce Lee Memorial to act on the misrepresentations (*id.* at ¶¶18 - 23, 47, 49 - 51); and (4) injury resulted to Lee Memorial acting in justifiable reliance upon the misrepresentations (*id.* at ¶¶52). *See, e.g., Cableview Communications of Jacksonville, Inc. v. Time Warner Cable Southeast LLC*, No. 3:13–cv–306–J–34JRK, 2014 WL 1268584 *12 (M.D. Fla. Mar. 27, 2014).

### 2. Breach of Fiduciary Duty against BCBSF

Likewise, Lee Memorial has alleged a claim for a breach of fiduciary duty, i.e. (1) the existence of a fiduciary duty on which it depended (*see* Complaint at ¶¶15, 19 – 22, 55, 56); (2) a breach of that duty (*id.* at ¶¶57, 58); and (3) damage proximately caused by that breach (*id.* at ¶59). *Hepp v. Paul Revere Life Ins. Co.*, No. 8:13–CV–02836–EAK–TBM, 2014 WL 3865389, *6 (M.D. Fla. Aug. 5, 2014). By virtue of the fact that Lee Memorial was not in a contract relationship with BCBSNJ, Lee Memorial was dependent on BCBSF to adequately and fully inform Lee Memorial what was required for it to make a timely claim against BCBSNJ through

the BCBSF claims process. BCBSF recognized, accepted and undertook the duties of a fiduciary for assuring that its claims process and that of BCBSNJ were complied with, as alleged.

*Hepp* is similar to the instant case; in *Hepp*, as here, a plaintiff relied on one company to represent its interest with third companies. In that case, the Court concluded that a fiduciary relationship existed because the defendant insurance holding company, which was "a separate and distinct holding company for its subsidiaries," was "entrusted with the management" of plaintiff's premiums and was "responsible for all claims handling for its subsidiaries" which were, as here respecting BCBSNJ, "foreign corporations, operating principally outside of Florida." *Hepp*, 2014 WL 3865389, *1, 4, 6. That Court, citing *Gracey v. Eaker*, 837 So.2d 348 (Fla.2002) and *Hogan v. Provident Life and Accident Ins. Co.*, 665 F.Supp.2d 1273 (M.D. Fla. 2009), two cases cited by the defendants, and others, held, "In Florida, a fiduciary relationship may be express or implied. *Hepp*, 2014 WL 3865389, *6. Implied fiduciary relationships are premised upon the specific factual situation surrounding the transaction and the relationship of the parties and exist where confidence is reposed by one party and a trust accepted by the other." *Id.* While recognizing that "[t]here is no fiduciary relationship between an insurer and an insured under Florida law," *Hepp*, nonetheless, held that allegations state "a plausible cause of action that a fiduciary relationship was created and that damages resulted from breach of that fiduciary duty." *Id.* Because BCBSF "shepherded Plaintiff through the [claims] process by undertaking a heightened role," as alleged, and, again as alleged, Lee Memorial placed its trust in BCBSF, and BCBSF took advantage of this relationship, breached its duty, and Lee Memorial suffered damages, Lee Memorial "has pled the necessary facts to survive dismissal;" a fiduciary relationship arose between Lee Memorial and BCBSF. *See, e.g., Pearson v. Countrywide Home Loans, Inc.*, No. 8:13–CV–1075–T–17AEP, 2014 WL 978324, *4 (M.D. Fla. Mar. 12, 2014).

18

### 3. Unjust Enrichment against BCBSF and BCBSNJ

Unjust enrichment may be pled directly or in the alternative "until an express enforceable contract is proven." *Baycare Health Sys., Inc. v. Med. Savs. Ins. Co.*, No. 8:07–cv–1222–T–27TGW, 2008 WL 792061 *10 (M.D. Fla. Mar. 25, 2008). Respectfully, Lee Memorial's claim for unjust enrichment should not be dismissed. *Baycare Health Sys.* held that

> "[a]lthough the parties may have never by word or deed indicated in any way that there was any agreement between them, the law will, in essence, 'create' an agreement in situations where it is deemed unjust for one party to have received a benefit without having to pay compensation for it." [Citation omitted].
>
> To prevail under this theory, the plaintiff must prove that (1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant has voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. *Id.* Further, the benefit conferred must be a "direct" benefit. [Citation omitted].

*Id. at* *8, 9. Lee Memorial has alleged unjust enrichment against BCBSF and BCBSNJ.

*Baycare Health Sys.* concluded that the plaintiff hospital system had alleged unjust enrichment against the defendant insurance company for refusing to pay billed charges for healthcare treatment provided to insureds. *Id. at* *9 – 10 (citing *Naples Community Hos., Inc. v. Med. Sav. Ins. Co.*, 2:04–CV–280–FTM–29SPC (Order, July 30, 2004), *Lee Mem'l Health Sys. v. Med. Sav. Ins. Co.*, 2:04–CV–445–FTM–33DNE (Doc. 21, Ex. B, p. 9) (holding "that the hospital 'conferred a benefit upon Medical Savings when it provided care and treatment for the Patients for a discounted fee' ") and *Shands Teaching Hosp. and Clinics, Inc. v. Beech Street Corp.*, 899 So.2d 1222, 1227 (Fla. 1st DCA 2005)). *See also Traditions Senior Management, Inc. v. United Health Adm'rs, Inc.*, No. 8:12–cv–2321–T–30MAP, 2013 WL 3285419 *4 (Honorable James S. Moody, Jr.) (M.D. Fla. June 27, 2013) (permitting amendment to a complaint against an insurance broker and advisor "and his affiliated companies," United Health

Administrators, Inc., Garden State Health Care Administrators, Inc. and Oxford Coverage, Inc. "to plead unjust enrichment as an alternative to breach of fiduciary duty"); *Shands Teaching Hosp. and Clinics, Inc.*, 899 So.2d at 1228 (holding that whether services to insureds unjustly enriched a plan administrator is a factual question not appropriately for motion to dismiss).

## Conclusion

Because this case is not preempted by ERISA and does not involve a federal question, it should be remanded in its entirety to the Circuit Court in and for Lee County, Florida, Case No. 2016-CA-001878, as Lee Memorial requests in its Motion to Remand. Alternatively, Lee Memorial's claims are not defensively preempted or otherwise subject to dismissal.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of October, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to the following: Daniel Alter, Esq., Gray Robinson, P.A, 401 East Las Olas Boulevard, Suite 1000, Fort Lauderdale, FL 33301 at dan.alter@gray-robinson.com.

/s/ Joel W. Walters
Joel W. Walters, Esq.
Florida Bar No. 604356
jwalters@walterslevine.com
WALTERS LEVINE, P.A.
1819 Main Street, Suite 1110
Sarasota, FL 34236
Telephone: 941-364-8787
Facsimile: 941-361-3023