UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LEE MEMORIAL HEALTH SYSTEM,

      Plaintiff,

v.                                                      Case No:   2:16-cv-901-FtM-38MRM

BLUE CROSS AND BLUE SHIELD OF
FLORIDA, INC., HORIZON
HEALTHCARE SERVICES, INC.,
HORIZON BLUE CROSS BLUE SHIELD
OF NEW JERSEY and HORIZON
BCBSNJ,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court are the following:

1) Motion to Dismiss Complaint (Doc. 9) filed on August 29, 2016;

2) Response in Opposition to Motion to Dismiss (Doc. 12) filed on October 12, 2016;

3) Motion for Remand (Doc. 13) filed on October 12, 2016;

4) Notice of Filing Affidavits in Support of Motion for Remand and in Opposition to Defendants' Motion to Dismiss Complaint (Doc. 14) filed on October 12, 2016; and

5) Response in Opposition to Motion to Remand (Doc. 17) filed on November 14, 2016.

These matters were referred to the Undersigned for a Report and Recommendation on January 6, 2017.  In the Complaint (Doc. 2), Plaintiff Lee Memorial Health System ("Lee Memorial") asserts state-law claims under an Agreement between Lee Memorial, on the one hand, and Defendants Blue Cross and Blue Shield of Florida, Inc. ("BCBSF") and Horizon Healthcare Services, Inc. d/b/a Blue Cross Blue Shield of New Jersey, Horizon Blue Cross Blue Shield of New Jersey, and Horizon BCBSNJ (collectively "BCBSNJ"), on the other hand.

Defendants argue that all of Lee Memorial's state-law claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29, U.S.C. § 1001, *et seq.* The primary issue in this case is, therefore, whether any of the state-law claims asserted are preempted by ERISA. If so, then removal to federal court was proper and dismissal of the preempted claims in the Complaint is warranted. Defendants also assert alternative arguments pursuant to Fed. R. Civ. P. 12(b)(6) that the state-law claims fail to state a claim.

## I.    Background

Brief backgrounds concerning the contractual relationship between the parties, the allegations in the Complaint, and the procedural posture of this case are instructive.

### A.    Preferred Patient Care Hospital Agreement

On October 1, 1985, Lee Memorial entered into a Preferred Patient Care Hospital Agreement ("Agreement") with BCBSF. (Doc. 2 at ¶ 9). Under the terms of the Agreement, Lee Memorial agreed to provide hospital services to policyholders of BCBSF in exchange for payment by BCBSF. (*Id.*). The parties amended the Agreement numerous times. (*Id.* at ¶ 10).

Relevant to this action is the Tenth Amendment executed on November 22, 1994, which states in pertinent part, "that no person, entity or organization other than BLUE CROSS AND BLUE SHIELD [i.e. BCBSF] shall be held accountable or liable to HOSPITAL [i.e. LEE MEMORIAL] for any of BLUE CROSS AND BLUE SHIELD'S obligations to HOSPITAL created under this Agreement." (*Id.*).

Also relevant to this action is the Twentieth Amendment entered into on December 9, 2008, which states in pertinent part:

> It is further agreed that BLUE CROSS AND BLUE SHIELD is entitled to treat individuals covered through sister Blue Cross and/or Blue Shield Plans (i.e. each Plan an independent corporation operating under a license or sub-license with the Blue Cross and Blue Shield Association) as Policyholders under this Agreement.

Such individuals being treated as being covered under a PREFERRED PATIENT CARE Benefit Agreement or other benefit agreement which provides access to participating providers in either the PREFERRED PATIENT CARE network or NetworkBlue network whichever is applicable. . . .  Payment for covered services provided to such Policyholders shall be in accordance with Exhibit D PREFERRED PATIENT CARE if the Policyholder is entitled to access the PREFERRED PATIENT CARE network or in accordance with Exhibit D NETWORK BLUE if the Policyholder is entitled to access the NetworkBlue network.

(*Id.* at ¶ 11).

###   B.     Factual Allegations in the Complaint (Doc. 2)

The Complaint alleges that Heather Picardi, a policyholder under a health plan underwritten by BCBSNJ, was admitted to Lee Memorial for treatment of complications relating to pregnancy.  (*Id.* at ¶ 13).  On May 26, 2011, Ms. Picardi prematurely gave birth to her minor son, N.P., who was a covered dependent of Ms. Picardi's BCBSNJ Plan.  (*Id.* at ¶ 14).  Pursuant to the Agreement, Lee Memorial submitted claims to BCBSF for the hospital services provided to Ms. Picardi and N.P.  (*Id.* at ¶ 15).

Initially, BCBSF denied the claim for N.P. because Lee Memorial had only obtained authorization to treat him from May 20, 2011 to May 29, 2011.  (*Id.* at ¶ 16).  Lee Memorial had, in fact, obtained preauthorization and because the birth did not occur until May 26, 2011, BCBSF was in error.  (*Id.* at ¶ 17).  After review, BCBSF advised Lee Memorial that authorization for the entire 124-day hospital stay would not be disputed, a new authorization number was being issued, and the claim would be paid.  (*Id.* at ¶ 18).  Further delays occurred with the following excuses:  (1) a new authorization number had not been processed properly, but this error was corrected; (2) a technical problem regarding restoring Lee Memorial's provider number in the database occurred following the initial claim denial, but BCBSF represented payment was forthcoming; and (3) continued other assurances that the claim was being processed.  (*Id.* at ¶¶ 19-21).

3

In January 2014, Lee Memorial was advised that the claim was being denied because of "failure to coordinate benefits." (*Id.* at ¶ 21). Specifically, Lee Memorial was told that primary coverage for the treatment of N.P. was afforded under a separate BCBSNJ group policy held by N.P.'s father and that coverage under Heather Picardi's BCBSNJ policy was only secondary. (*Id.* at ¶ 22). Further, Lee Memorial was advised that because the claim was beyond a one-year time frame, any new claim would be untimely under the father's policy. (*Id.* at ¶ 23). On September 4, 2014, Lee Memorial's final appeal of the claim denial for treatment of N.P. was denied by BCBSF. (*Id.* at ¶ 24).

Lee Memorial brings the following claims: Count I, for Declaratory Relief under Florida Statutes Chapter 86 (*id.* at ¶¶ 28-33); Count II, for Breach of Contract (*id.* at ¶¶ 35-38); Count III, for Promissory/Equitable Estoppel (*id.* at ¶¶ 40-44); Count IV, for Negligent Misrepresentation (*id.* at ¶¶ 46-51); Count V, for Breach of Fiduciary Duty (*id.* at ¶¶ 54-59); Count VI, for Unjust Enrichment (*id.* at ¶¶ 61-69); and Count VII, for Breach of Implied Covenants of Good Faith and Fair Dealing Against BCBSF (*id.* at ¶¶ 97-100).

### C.    Procedural Background

On August 12, 2016, Defendants removed the case to federal court on the ground that the policies held by Heather Picardi and the father are central to this controversy and constitute "employee welfare benefit plans" within the meaning of ERISA. (Doc. 1 at 6). Defendants claim that these two plans are "self-funded" employee welfare benefit plans governed by ERISA. (*Id.* at 7). As such, Defendants assert that the state-law claims raised in this case are completely preempted by ERISA and removal was appropriate. (*Id.*). Defendants also move to dismiss this action, arguing that the state-law claims are completely and defensively preempted by ERISA. (Doc. 9 at 1).

Following removal, Lee Memorial moved to remand this action back to state court, asserting that this Court lacks jurisdiction over this matter.  (*See* Doc. 13 at 6).  Many of the arguments in the Motion to Dismiss (Doc. 9) and Motion to Remand (Doc. 13) are intertwined and repetitive.  Nevertheless, the Court must first address whether it has subject-matter jurisdiction in this case before delving into the non-jurisdictional issues raised in the Motion to Dismiss.  *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("[A] federal court must remand for lack of subject matter jurisdiction notwithstanding the presence of other motions pending before the court."); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587 (1999) (determining subject-matter jurisdiction at the outset of the case is often the most efficient way of proceeding).  Thus, the Court will address the jurisdictional issues raised in the Motion for Remand (Doc. 13) first and then turn to the remaining issues raised in the Motion to Dismiss (Doc. 9).

## II.     Motion to Remand

Lee Memorial asserts that it brought only state-law claims and this Court lacks jurisdiction to determine these claims.  Defendants argue that Lee Memorial's claims are completely preempted by ERISA and, thus, jurisdiction rests in federal court.  The burden of establishing federal jurisdiction falls on the party attempting to invoke the jurisdiction of the federal court.  *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *see also Rocky Mountain Holdings, LLC v. Blue Cross & Blue Shield of Fla., Inc.*, No. 608-CV-686-ORL-19KRS, 2008 WL 3833236, at *1 (M.D. Fla. Aug. 13, 2008).  The party seeking removal has "the burden of producing facts supporting the existence of federal subject matter jurisdiction by a preponderance of the evidence." *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1242 (11th Cir. 2001).  District courts should strictly construe the requirements of 28 U.S.C. §

1441 (removal jurisdiction) and remand all cases in which jurisdiction falls outside of the parameters of the statute. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941); *see also Rocky Mountain Holdings, LLC*, 2008 WL 3833236, at *1.

Removal to federal court is proper in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). To establish original jurisdiction, an action must satisfy the requirements of either federal-question jurisdiction under 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332. In this case, Defendants claim this matter arises under federal-question jurisdiction. (*See* Doc. 1 at 2).

Generally, the test to determine if federal-question jurisdiction exists is whether a federal question appears on the face of the well-pleaded complaint. *Gables, Inc. v. Blue Cross & Blue Shield of Fla., Inc.*, 813 F.3d 1333, 1337 (11th Cir. 2015), *cert. denied*, 137 S. Ct. 296 (2016); *Ervast v. Flexible Prods. Co.*, 346 F.3d 1007, 1012 (11th Cir. 2003). The Eleventh Circuit has "recognized that '[c]omplete preemption is a narrow exception to the well-pleaded complaint rule and exists where the preemptive force of a federal statute is so extraordinary that it converts an ordinary state law claim into a statutory federal claim.'" *Gables*, 813 F.3d at 1337 (quoting *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009)). On a Motion to Remand, the Court is permitted to consider the evidence in the petition for removal and motion to remand, and may consider evidence outside the removal petition. *May v. Lakeland Reg'l Med. Ctr.*, No. 809-CV-406-T-33AEP, 2010 WL 376088, at *3 (M.D. Fla. Jan. 25, 2010) (citing *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000)). The evidence considered must be judged at the time of removal and must support the grounds for removal found in the Notice of Removal. *Id.*

There is no dispute that Lee Memorial pled only state-law claims in the Complaint (Doc. 1).  The issue is whether these state-law claims are completely preempted by § 502(a) of ERISA. A plan participant or a beneficiary under a plan has a private right of action to recover benefits under a health insurance plan pursuant to § 502(a) of ERISA.  *Gables*, 813 F.3d at 1337.  ERISA § 502(a)(1)(B) provides:

> A civil action may be brought—(1) by a participant or beneficiary— . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).  "This provision is relatively straightforward.  If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits.  A participant or beneficiary can also bring suit generically to 'enforce his rights' under the plan, or to clarify any of his rights to future benefits."  *Davila*, 542 U.S. at 210. "This section has such 'extraordinary' preemptive power that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"  *Gables*, 813 F.3d at 1337 (quoting *Connecticut State Dental*, 591 F.3d at 1344, which in turn quotes *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).  Thus, even though Lee Memorial pled only state-law claims, if these causes of action are within the civil enforcement provisions of § 502(a), then they are removable to federal court as a federal claim. *See id.* (citing *Taylor*, 481 U.S. at 66).  It bears noting, however that "[t]he removing party bears the burden of demonstrating complete preemption and, where jurisdiction is not absolutely clear, the Eleventh Circuit favors remand."  *Sheridan Healthcorp, Inc. v. Aetna Health Inc.*, 161 F. Supp. 3d 1238, 1244 (S.D. Fla. 2016).

To determine whether causes of action are within the scope of § 502(a), courts apply the two-part test established in *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). *See Gables*, 813 F.3d at 1337. Under this test, a court must ask:  "'(1) whether the plaintiff could have brought its claim under § 502(a); and (2) whether no other legal duty supports the plaintiff's claim.'" *Id.* (quoting *Connecticut State Dental*, 591 F.3d at 1345).  If the answer to both questions is in the affirmative, then the claim is completely preempted. *See id.*  In this case, the Court will consider each part of the *Davila* test in turn.

### A.    Whether Lee Memorial Could Have Brought the Claims Under ERISA

To determine if Lee Memorial could have brought its claims under § 502(a) of ERISA, the Court must consider:  (1) whether Lee Memorial's claims fall within the scope of ERISA; and (2) whether Lee Memorial has standing to sue under ERISA.  *See Gables*, 813 F.3d at 1338. Given the importance that the parties have placed on the standing issue in their briefs, the Court will address standing first.

### 1.    Standing

To assert a claim under ERISA, a plaintiff must have statutory standing, "meaning the plaintiff has the right to make a claim under section 502(a)."  *See Gables*, 813 F.3d at 1338. Only two categories of individuals may bring suit under ERISA, plan participants and beneficiaries.  *Id.* (citing 29 U.S.C. § 1132(a)(1)(B)).  Healthcare providers generally are not either plan participants or beneficiaries under ERISA and, thus, lack independent standing to bring suit under ERISA.  *Id.*  According to the Eleventh Circuit:

> There is, however, an exception to this general rule.  "[A] healthcare provider may acquire derivative standing to sue under ERISA by obtaining a written assignment from a 'participant' or 'beneficiary' of his right to payment of medical benefits." . . . . [N]othing in ERISA prohibits a healthcare provider from acquiring "derivative standing based upon an assignment of rights" from a participant or beneficiary. . . . . We recognized that "the interests of ERISA plan participants and beneficiaries

> are better served by allowing provider-assignees to sue ERISA plans" because the providers "are better situated and financed to pursue an action for benefits owed for their services."

*Id.* at 1339 (internal citations omitted). Thus, in this case, Lee Memorial could obtain derivative standing if the payment of benefits for the treatment of N.P. was assigned to Lee Memorial. *See id.*

Lee Memorial claims that it has no such assignment from the plan participant or beneficiary in this case and, thus, it lacks standing. (Doc. 13 at 3, 9). Conversely, Defendants argue that Lee Memorial's own claim forms indicate that it does indeed have an assignment of benefits and, consequently, it also has standing to bring suit under ERISA. (Doc. 17 at 2). In this regard, Defendants rely on two claim forms that were submitted electronically to BCBSF for payment of services rendered to N.P. (Docs. 1-3 at 1-2).

Lee Memorial claims that case law requires a written assignment of benefits in order for a healthcare provider to have standing to bring an ERISA claim. (Doc. 13 at 9). Lee Memorial asserts that the affidavit filed by Defendants and the electronic claim forms do not constitute an assignment of benefits. (*Id.*). To further support its position, Lee Memorial filed an affidavit of the director of its business office, Patricia O'Brien, who states that Lee Memorial provided services to N.P. and obtained authorization from BCBSF. (Doc. 14-2 at ¶¶ 3, 8). After diligent investigation, including review of the patient account records, Ms. O'Brien states that Lee Memorial did not obtain a written assignment of benefits for treatment of N.P. (*Id.* at ¶¶ 9-10).

Defendants, on the other hand, argue that Lee Memorial ignores the distinction between "jurisdictional" standing and standing as a substantive element of an ERISA claim. (Doc. 17 at 10). Defendants claim that the jurisdictional form of standing that is implicated in the Motion to Remand. (*Id.*). Defendants assert that this jurisdictional component requires a plausible

allegation of standing, not the actual proof of standing that is required as a substantive element of an ERISA claim.  (*Id.* at 11).  For jurisdictional standing, Defendants argue that a party need only show a plaintiff has a "colorable" claim for benefits in order to establish subject-matter jurisdiction.  (*Id.* (citing *Connecticut State Dental*, 591 F.3d at 1353)).  Defendants assert that here, the actual claim forms filed with the Notice of Removal (Doc. 1-3) are sufficient to show for jurisdictional purposes that Lee Memorial received an assignment of benefits to recover payment for services rendered to N.P.  (Doc. 17 at 15).  Moreover, Defendants assert that the case law on which Plaintiff relies is distinguishable and has been implicitly overruled.  (*Id.* at 9).

To establish that Lee Memorial has standing to assert ERISA claims, Defendants rely on the electronic claim forms submitted by Lee Memorial to BCBSF and the Declaration of Lise M. Strother, Consultant I Litigation Management for BCBSF.  (*See* Docs. 1-3, 1-9).  Ms. Strother indicates that in field location box 53 on typical electronic claim forms submitted for payment, a facility indicates that it possesses an assignment of insurance benefits from its patients.  (Doc. 1-9 at ¶ 4).  To indicate whether benefits were assigned, Ms. Strother states that a "Y" in field location box 53 indicates "yes" showing that assignments were on file.  (*Id.* at ¶¶ 4, 5).  Ms. Strother reviewed the two Corrected Claim Forms that Lee Memorial submitted for payment of health plan benefits for services rendered to N.P.  (*Id.* at ¶ 5).[1]  Ms. Strother states that by Lee Memorial inserting "Y" in field location box 53 on both Corrected Claim Forms, Lee Memorial represented that it had an assignment of health plan benefits for N.P.  (*Id.* at ¶ 8).  Because these Claim Forms were difficult to read, Ms. Strother submitted a blank sample Claim Form as well.  (*Id.* at ¶ 7).

---

[1]  The original Claim Forms (Doc. 1-5) were filed with the Notice of Removal as were the Corrected Claim Forms (Doc. 1-3).

The blank sample Claim Form is legible and indicates in field location box 53 "ASG. Ben." (Doc. 1-6). In the two Corrected Claim Forms, field location box 53 contains a "Y" for "BC Spec/Out of Area" and a "Y" for "Medicaid." (Doc. 1-3 at 1, 2). These Corrected Claim Forms and Ms. Strother's Affidavit are the only documents submitted by Defendants in support of their contention that benefits for payment of the claims were assigned to Lee Memorial sufficient to give Lee Memorial jurisdictional standing under ERISA.

The Court must determine whether the Corrected Claim Forms along with the Affidavit of Ms. Strother are sufficient to establish Lee Memorial's standing under ERISA, notwithstanding Lee Memorial's disclaimer that it does not have such standing. In this regard, Plaintiff relies on *Riverside Med. Assocs. v. Humana, Inc.*, No. 06-61490-CIV-COHN, 2006 WL 3827541, at *1 (S.D. Fla. Dec. 28, 2006) and *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236 (11th Cir. 2001) to support its lack of standing under ERISA.

In *Riverside Medical*, a medical provider brought a claim in state court against defendants for underpaying medical claims for the treatment of patients. 2006 WL 3827541, at *1. Defendants removed the case to federal court on the ground that ERISA preempted the state-law claims asserted. *Id.* at *1-2. The court held that defendants had not met their burden of showing written assignments of claims from ERISA beneficiaries to plaintiff. *Id.* at *2. Specifically, the Court found that the record did not contain the claim forms that defendants asserted showed an assignment of benefits and, without these forms, defendants failed to meet their burden on removal of showing that federal subject-matter jurisdiction existed. *Id.* This Court finds that *Riverside Medical* is readily distinguishable from the instant case because here, Defendants have filed the actual Corrected Claim Forms submitted for payment of services rendered and these

Corrected Claim Forms indicate in field location box 53 that Lee Memorial had an assignment of benefits.  (*See* Doc. 1-3).

In *Hobbs*, the plaintiffs were licensed physician assistants who brought a class action in state court against Blue Cross Blue Shield of Alabama for reimbursement of costs for services rendered by physician assistants.  276 F.3d at 1239.  Blue Cross Blue Shield of Alabama removed the action to federal court, asserting federal-question jurisdiction because the state-law claims were preempted by ERISA.  *Id.*  Plaintiffs moved to remand the action, arguing against ERISA preemption.  *Id.* at 1239-40.  The district court denied the motion to remand.  *Id.* at 1240.

On appeal, the Eleventh Circuit held that plaintiffs did not have standing to present an ERISA claim because they were not participants or beneficiaries in an employee healthcare plan. *Id.* at 1243.  The *Hobbs* court reasoned that a healthcare provider has derivative standing to sue under ERISA if it has obtained a written assignment of claims from a patient who had standing to sue under ERISA as a beneficiary or participant.  *Id*. at 1241 (citing *Cagle*, 112 F.3d 1510, 1512-13 (11th Cir. 1997)).  The Eleventh Circuit held that Blue Cross Blue Shield of Alabama failed to demonstrate that plaintiffs obtained an assignment of benefits from their patients, especially when it admitted that it did not know whether plaintiffs received an assignment.  *Id.* Based upon the lack of evidence of an assignment, the Eleventh Circuit found that plaintiffs lacked standing to bring a claim under ERISA and reversed the trial court with instructions to remand the action to state court.  *Id.* at 1242, 1244.  Considered in a vacuum, *Hobbs* would tend to support Lee Memorial's position that it lacks standing.  However, *Hobbs* was decided in 2001 and, since that time, decisions by and within the Eleventh Circuit have elaborated on the written-assignment requirement in a way that is not favorable to Lee Memorial's position concerning jurisdictional standing here.

As a threshold matter, cases decided post-*Hobbs* have emphasized that to establish subject-matter jurisdiction over a complaint, a party must make only a plausible argument that a federal statute creates the right to relief. *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1221-22 (11th Cir. 2008). Thus, Defendants here need only show a plausible or colorable claim for jurisdiction under ERISA. *Id.*; s*ee also Connecticut State Dental*, 591 F.3d at 1353.

The case of *Connecticut State Dental*, cited *supra*, was decided in 2009 after *Hobbs* and is instructive. In that case, two dentists provided services to individuals enrolled in defendant's insurance plan and brought suit, *inter alia*, to recover alleged underpayments for their services. 591 F.3d at 1342. The trial court denied plaintiffs' motion to remand and later granted defendant's motion to dismiss because plaintiff failed to respond to the motion to dismiss. *Id.* at 1343. On appeal, the Eleventh Circuit, *inter alia*, affirmed the district court's denial of the motion to remand but reversed the district court's grant of the motion to dismiss. *Id. at 1357*.

In the Eleventh Circuit's analysis of the assignment issue in *Connecticut State Dental*, the court considered the claim forms that the insurance company presented to the trial court for reimbursement for services as well as an affidavit from an employee of the insurance company. *Id*. at 1351. The affidavit indicated that the claim forms were typical of claim forms that the insurance company received from Connecticut dentists. *Id.* The typical claim forms contained the following language: "'I hereby authorize payment of the dental benefits otherwise payable to me directly to the below named dental entity.'" *Id.* The insurance company argued that these claim forms were sufficient to show an assignment of benefits by the dentists' patients. *Id.*

The Eleventh Circuit agreed, holding "[o]ur own cases confirm that assignment of the right to payment is enough to create standing. 'Healthcare providers may acquire derivative standing . . . by obtaining a written assignment from a 'beneficiary' or 'participant' of his right to

payment of benefits under an ERISA-governed plan.'" *Id.* at 1352.  Relying on its own

precedent in *Cagle v. Bruner*, 112 F.3d at1515, the Eleventh Circuit reasoned that if the provider

cannot sue under ERISA for payment, then the provider will turn to the plan participant or

beneficiary directly for payment of the medical bills and, in turn, the plan participant or

beneficiary will be required to bring suit against the benefit plan.  *Connecticut State Dental*, 591

F.3d at 1352.  "On the other hand, if provider-assignees can sue for payment of benefits, an

assignment will transfer the burden of bringing suit from plan participants and beneficiaries to

'providers[, who] are better situated and financed to pursue an action for benefits owed for their

services.'" *Id.* at 1352-53 (quoting *Cagle*, 112 F.3d at 1515).  The Eleventh Circuit concluded,

therefore, that "all one needs for standing under ERISA is a colorable claim for benefits, and

'[t]he possibility of direct payment is enough to establish subject matter jurisdiction.'" *Id.* at

1353 (citation omitted).  Moreover, the Eleventh Circuit found that even though the insurance

company did not link any particular assignment to a particular ERISA plan, the affidavit that was

submitted was sufficient to demonstrate that the assignments in the claim forms were

representative of the assignments the dentists received for services they rendered.  *Id.*

Similarly, in *Gables Ins. Recovery, Inc. v. Blue Cross Blue Shield of Fla., Inc.*, plaintiff

brought suit against an insurance company to recover the costs of medical services provided by a

chiropractic group that had assigned all of its rights to plaintiff to pursue all available causes of

action against defendant.  110 F. Supp. 3d 1259, 1263 (S.D. Fla. 2015), *aff'd*, 813 F.3d 1333

(11th Cir. 2015), *cert. denied*, 137 S. Ct. 296 (2016).  Plaintiff moved to remand the action to

state court and defendant moved to dismiss the action.  *Id.*  The trial court denied the motion to

remand and dismissed the action to allow plaintiff to pursue its administrative remedies under

ERISA.  *Id.* at 1267.  In evaluating whether to remand, the trial court considered plaintiff's

standing. *Id.* at 1265. Specifically, the trial court considered the record evidence showing that the chiropractic clinic received an assignment of benefits from the plan participant or beneficiary for medical services provided to him. *Id.* That evidence was in the claim form that the chiropractic clinic submitted to the insurance company, which claim form indicated that the chiropractic clinic had received an assignment of benefits from the patient. *Id.* The district court noted that the Eleventh Circuit had previously held that similar evidence was sufficient to show an assignment of benefits. *Id.* (citing *Connecticut State Dental*, 591 F.3d at 1351). The district court also noted that if plaintiff did not have standing to sue, then it could not recover the payment that it sought in the lawsuit. *Id.* (citing *Gables Ins. Recovery v. United Healthcare Ins. Co.*, 39 F. Supp. 3d 1377, 1387 (S.D. Fla. 2013)).

The instant case is analogous to *Gables*. 110 F. Supp. 3d at 1259, 1265. In this case, as in *Gables*, Defendants have filed with this Court the electronic Corrected Claim Forms submitted to them by Lee Memorial seeking direct payment. (Doc. 1-3). Further, as in *Gables*, these Corrected Claim Forms both indicate that the plan participant or beneficiary assigned his/her rights to payment of benefits to Lee Memorial. *See* 110 F. Supp. 3d at 1265. In the instant case, the field location boxes 53 contained "Y['s]" indicating affirmatively that an assignment of health benefits existed. (*See* Doc. 1-3). Further, just as in *Gables*, Lee Memorial is attempting to obtain payment directly from the insurance company for services provided by it. (*See id.*).

Although the affidavit of Ms. O'Brien contains a sworn statement that Lee Memorial did not obtain an assignment of benefits for treatment of N.P., (Doc. 14-2 at ¶¶ at 9-10), the Corrected Claim Forms appear to contradict that representation, (*See* Docs. 1-3, 14-2). Ms. O'Brien's affidavit fails to explain this contradiction. (*See* Docs. 1-3, 14-2 at ¶ 9). By contrast, Ms. Strother's affidavit explains that the "Y" in field location box 53 of the Corrected Claim

Forms indicates that Lee Memorial had an assignment of health plan benefits for N.P.  (Doc. 1-9 at ¶ 7).

For jurisdictional standing to exist, Defendants need only show that a "colorable claim" exists under ERISA.  *See Connecticut State Dental*, 591 F.3d at 1353; *see also Lanfear*, 536 F.3d at, 1221-22 (11th Cir. 2008) (finding that a party must make only a "plausible argument" that a federal statute creates the right to relief).  By filing the Corrected Claim Forms and Ms. Strother's Affidavit explaining the Corrected Claim Forms, Defendants have met their burden of showing a colorable claim that the benefit payments were assigned to Lee Memorial, that Lee Memorial has standing under ERISA, and that Lee Memorial sought and was entitled to receive direct payment of benefits for the claims at issue.  Therefore, the Court finds that Lee Memorial has sufficient standing to satisfy the jurisdictional inquiry.

### 2. Claims Within the Scope of ERISA[2]

In addition to standing, the first part of the *Davila* test requires Defendants to show that Lee Memorial's claims fall within the scope of ERISA.  *See Gables*, 813 F.3d at 1338.  "In *Davila*, the Supreme Court held that a claim alleging a wrongful denial of coverage under the terms of an ERISA-regulated employee benefits plan falls within the scope of ERISA."  *Id.* (citing *Davila*, 542 U.S. at 214).

There are "two types of claims that can be made by providers against insurers:  those challenging the 'rate of payment' pursuant to the provider-insurer agreement, and those challenging the 'right to payment' under the terms of an ERISA beneficiary's plan."  *Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1302 (11th Cir. 2010).  A challenge concerning

---

[2]  Neither party addressed this issue as a distinct issue in their briefs, choosing instead to subsume the issue in their discussion of whether any other legal duty supports the Lee Memorial's claim.  Nonetheless, the Court will consider this issue separately.

the "rate of payment" does not necessarily implicate an ERISA plan, but a challenge to the "right to payment" under an ERISA plan does. *Id.* (citing *Connecticut State Dental*, 591 F.3d at 1350-51). This Court must, therefore, evaluate each of the state-law claims alleged by Lee Memorial in light of this standard. *See Gables*, 813 F.3d at 1338.

In the Complaint, Lee Memorial alleges that N.P. was a covered dependent of Heather Picardi under her BCBSNJ policy. (Doc. 2 at ¶ 14). Lee Memorial submitted claims for the services provided to N.P. (*Id.* at ¶¶ 15). Lee Memorial was told initially that the claims were denied for problems with authorization. (*Id.* at ¶ 16). After that issue was resolved, then problems arose concerning the authorization number and other technical issues relating to authorization. (*Id.* at ¶ 17-20). Lee Memorial was eventually told that payment was forthcoming. (*Id.* at ¶ 20). Ultimately, the claim was denied for failure to coordinate benefits. (*Id.* at ¶ 21).

With the exception of the Promissory/Equitable Estoppel (Count III) and Negligent Misrepresentation (Count IV) claims, Lee Memorial's other claims for Declaratory Relief (Count I), Breach of Contract (Count II), Breach of Fiduciary Duty (Count V), Unjust Enrichment (Count VI), and Breach of Implied Covenants of Good Faith and Fair Dealing Against BCBSF (Count VII) relate fundamentally to the right to payment for *covered* services provided to N.P., an individual allegedly *covered* under an ERISA-based insurance plan or plans. Even though Lee Memorial labels these claims as state-law claims, the "labels affixed to claims to distinguish between preempted and non-preempted claims is not helpful because doing so would elevate form over substance and allow parties to evade the preemptive scope of ERISA." *Connecticut State Dental*, 591 F.3d at 1350 (quotations omitted) (citing *Davila*, 542 U.S. at 214). Here, the basis for the claims raised in Counts I-II and V-VII is the right to payment for services rendered

to N.P. under the ERISA-based insurance plan(s), not to rate of payment due under the

Agreement, the Amendments thereto, or otherwise.  Thus, the claims raised in Count I-II and V-

VII are clearly within the scope of ERISA.[3]

The claims for Promissory/Equitable Estoppel (Count III) and Negligent

Misrepresentation (Count VI) do not fall within the scope of ERISA, however.  These claims

arise from allegations of an independent legal duty outside of the terms of an ERISA-based

policy.  As to these two claims, the Eleventh Circuit held in *Connecticut State Dental* that "a

healthcare provider's claims of negligent misrepresentation and estoppel based on a plan's oral

misrepresentations are not ERISA claims because they do not arise from the plan or its terms."

591 F.3d at 1347 (citing *Franciscan Skemp*, 538 F.3d at 597).  This language is unequivocal and

controlling.  Thus, applying this rule to these two claims leads to the conclusion that Lee

Memorial's claims of negligent misrepresentation and estoppel fall outside of the scope of

ERISA.  As such, these claims cannot satisfy the *Davila* test for complete preemption.  *See*

*Gables*, 813 F.3d at 1337; *Borrero*, 610 F.3d at 1304.  Although these claims are not preempted,

the Court will continue with its analysis below as to whether a legal duty outside of ERISA

supports these two claims.

**B.    Whether No Other Legal Duty Supports Plaintiff's Claim**

Under the second part of the *Davila* test, the Court must consider whether Lee

Memorial's claims arise out of a separate duty independent of the ERISA plan.  *See Gables*, 813

F.3d at 1337.  "The test in *Davila* is conjunctive—both parts must be satisfied for a claim to be

---

[3]  Even if these claims were deemed to be hybrid claims concerning both "rates of payment" and
"right to payment," these claims would still fall within the scope of ERISA under the *Davila*
complete preemption analysis.  *See Connecticut State Dental*, 591 F.3d at 1352; *Borrero*, 610 F.
3d at 1303.

completely preempted." *Borrero*, 610 F.3d at 1304. In other words, after Defendants demonstrate that Lee Memorial's claims could have been brought under ERISA, then Defendants must show that the claims asserted "did not implicate legal duties independent of those imposed by ERISA, or an ERISA plan's terms." *See id.* (citing *Davila*, 542 U.S. at 210).

Thus, this Court must determine whether Lee Memorial's claims depend upon Defendants' duty to pay for services under the ERISA plan or plans. *See Gables*, 813 F.3d at 1337. Clearly, Lee Memorial has attempted to plead only state-law claims that do not implicate ERISA. (*See* Doc. 2). However, claims challenging a coverage determination under an ERISA-based plan implicate ERISA. *Borrero*, 610 F.3d at 1304 (citing *Connecticut State Dental*, 591 F.3d at 1353). Moreover, § 502(a) of ERISA,

> creates a private right of action for a plan participant or beneficiary to recover benefits due under the terms of a health insurance plan. 29 U.S.C. § 1132(a). This section "has such 'extraordinary' preemptive power that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"

*Id.* (citing *Connecticut State Dental*, 591 F.3d at 1344). Furthermore, if any of the claims are completely preempted by ERISA, then the district court has jurisdiction over any claims joined with the preempted claims. *Connecticut State Dental*, 591 F. 3d at 1353.

Lee Memorial asserts that its claims are based upon independent legal duties arising under Florida law, Defendants breached the Agreement with Lee Memorial, and that Lee Memorial's claims do not depend upon an assignment of benefits from Defendants' policyholder. (Doc. 13 at 10). Lee Memorial contends that its Complaint controls the ERISA preemption analysis and the Court must look to the nature of the claims pled. (*Id.* at 11). Lee Memorial lists those claims as follows: "declaratory relief under the Agreement and amendments thereto; breach of contract; promissory/equitable estoppel; negligent

misrepresentation; breach of fiduciary duty under the Agreement; unjust enrichment; and breach of the implied covenant of good faith and fair dealing." (*Id.*).  Lee Memorial concludes that the Complaint "clearly" alleges causes of action under state law that are independent of ERISA and it asserts that its claims do not seek a judicial determination of its "right to payment" under an ERISA benefits plan.  (*Id.* at 11-12).

Defendants argue that Lee Memorial cannot rely on state-law labels to avoid preemption when "the interpretation of the subject benefit plans form[s] an essential part of [Lee Memorial's] statutory claims and such liability exist[s] only because of the [D]efendants' administration of the ERISA plans." (*See* Doc. 17 at 15-16).  Defendants contend that Lee Memorial seeks a remedy for a denial of coverage under the terms of an ERISA plan or plans. (*Id.* at 16).  According to Defendants, "[t]here must be a predicate finding that the services in controversy are indeed 'covered' by the applicable ERISA plan" as alleged in the Complaint. (*Id.*).  Defendants assert that the Agreement does not control the issue of whether the services were covered or otherwise eligible for payment.  (*Id.* at 17).  Stated differently, Defendants' position appears to be that if coverage does not exist under the applicable ERISA plan in the first instance, then no liability attaches under Lee Memorial's claims as they are alleged in the Complaint.

Lee Memorial relies heavily on *Mitchell-Hollingsworth Nursing & Rehab., Ctr., LLC v. Blue Cross & Blue Shield of Mich.*, 919 F. Supp. 2d 1209 (N.D. Ala. 2013) to support its position.  In *Mitchell-Hollingsworth*, a skilled nursing facility sued insurers asserting state-law claims for, *inter alia*, breach of contract, negligence, misrepresentation, fraud, promissory estoppel, quantum meruit, unjust enrichment, conspiracy, and conversion.  919 F. Supp. 2d at 1214-15.  Prior to admission of the patient to the nursing home, the nursing home contacted the

insurance provider to verify the limits of coverage available to the patient.  *Id.* at 1213.  After the nursing home submitted its claims, the insurance companies paid the nursing home for the entire amount requested.  *Id.*  At some later time, one insurance company wrote to the nursing home to recoup some of the payments because they were made for non-covered services.  *Id.* at 1213.  Upon contacting the customer service departments for the insurance companies, the nursing home learned that coverage was materially different than previously described.  *Id.*  The insurance company withheld $145,600 from the nursing home for what it claimed were non-covered services.  *Id.*

The court held that these state-law claims were not preempted by ERISA, no other basis for federal jurisdiction was alleged and, thus, the motion to remand was granted.  *Id.* at 1221-22.  The court determined that the claims raised were based upon an independent agreement between the nursing home and the insurance companies or based upon independent activities engaged in by defendants, and not based upon the original agreement between the patient and her insurance company.  *Id.* at 1219.  The court found that it would not need to construe the terms of any ERISA-based policy or determine whether the patient was entitled to coverage under the plan.  *Id.*  "Instead, the court would only be called upon to determine whether either defendant misrepresented the extent of Ms. Beauchamp's benefits, or breached an independent agreement with Mitchell-Hollingsworth to provide coverage for Ms. Beauchamp's care."  *Id.*

The facts in *Mitchell-Hollingsworth* are, to some extent, distinguishable from the present case.  In *Mitchell-Hollingsworth*, the insurance company actually paid for the provided services in the first instance and then sought to recoup some of the payments for non-covered services.  *Id.* at 1213.  The court found that it did not need to construe the ERISA plan terms to decide the claims presented under those facts.  *Id.*

More importantly, however, *Mitchell-Hollingsworth* is not controlling.  The Eleventh Circuit – which is controlling here – has more recently held that in a case where a provider contacted an insurer to confirm coverage of a patient for the services provided under the subject healthcare plan and the insurer agreed that the patient was covered under the plan, the complaint "expressly tethered the insurer's preauthorization to its obligations under the insurance plan." *Gables*, 813 F.3d at 1338.  Thus, this Court must consider and evaluate each of the claims in the Complaint and whether, as pled, they are tethered to alleged obligations arising under the insurance plan.  *Id.*; *see also Borrero*, 610 F.3d at 1304.

In the Complaint (Doc. 2), as general background facts that are re-alleged in each count of the Complaint (*Id.*), Lee Memorial alleges that the Twentieth Amendment to the Agreement provides that payment for "covered services" provided to Policyholders will be accordance with the Twentieth Amendment and the Agreement.  (*Id.* at ¶ 11).  Lee Memorial also alleges that N.P. was a covered dependent of Heather Picardi.  (*Id.* at ¶ 14).  BCBSF advised that the entire hospital stay of N.P. would be paid.  (*Id.* at ¶ 18).  After further problems, BCBSF indicated that payment would be forthcoming.  (*Id.* at ¶ 20).  Lee Memorial continued to be told that the claim was being processed and would be paid until it was advised that the claim was denied because of failure to coordinate benefits.  (*Id.* at ¶ 21).  Lee Memorial claims that BCBSF breached the Agreement by failing to pay for covered services rendered to N.P., who was a covered dependent under a BCBSNJ health plan.  (*Id.* at ¶ 37).

Based upon these background facts incorporated by reference into each and every count of the Complaint, it appears that all of the claims are facially tethered to some extent to the issue of whether N.P. was covered under the ERISA-based policy and whether the services provided were also covered.  But courts have held that references to background facts alone are not

sufficient to show that the claims raised are preempted by ERISA.  *See Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 599 (7th Cir. 2008) (citing *Metro Denver v. Group Health Ins. of Okla., Inc.*, 944 F.2d 752, 754 (10th Cir. 1991); *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 243-50 (5th Cir. 1990)).[4] Thus, the Court must consider not only the background facts, but also the actual claims asserted in each count to determine whether a specific claim is preempted by ERISA.

### 1.     Declaratory Relief and Breach of Contract (Counts I and II)

In Count I, Lee Memorial requests declaratory relief under Chapter 86, Florida Statutes. (Doc. 2 at ¶ 28).  Lee Memorial alleges that because it is a participating provider under the Preferred Patient Care network and because BCBSNJ is a "sister Blue Cross and/or Blue Shield Plan" within the meaning of the Twentieth Amendment to the Agreement, Lee Memorial is entitled to be paid for the treatment of N.P.  (*Id.* at ¶ 30).  Further, Lee Memorial alleges that pursuant to the Tenth Amendment to the Agreement, BCBSF is liable for the costs incurred in the treatment of N.P.  (*Id.* at ¶ 31).  Similarly, in Count II for Breach of Contract, Lee Memorial alleges that it provided services to N.P. and complied with the terms of the Agreement, yet BCBSF breached the Agreement by failing, *inter alia*, to *pay for covered services* rendered to N.P.  (*Id.* at ¶ 37 (emphasis added)).

In Count II, Lee Memorial asserts a claim for Breach of Contract.  (*Id.* at ¶¶ 34-38).  Lee Memorial alleges that, pursuant to the terms of the Agreement, it "provided hospital goods and services to [N.P.] and in all other respects complied with the terms and conditions of the

---

[4]  The case of *Franciscan Skemp Healthcare, Inc.* was cited and relied upon favorably on other grounds by the Eleventh Circuit in *Connecticut State Dental*, 591 F.3d at 1347.

Agreement as to the manner in which it submitted a claim to BCBSF for payment for such goods and services." (*Id.* at ¶ 36). Lee Memorial further alleges that:

> BCBSF breached the Agreement in the following respects:
>
> a)    failing and refusing to make timely and sufficient payment for *covered* services rendered to [N.P.], who was a *covered* dependent *under a BCBSNJ health plan*;
>
> b)    failing and refusing to furnish timely and accurate information and decisions relating to the *adjudication of the claim*;
>
> c)    failing and refusing to furnish timely authorization to perform hospital services required by [N.P.], who was a *covered* dependent *under a BCBSNJ health plan*; and
>
> d)    failing and refusing to abide by its own policies and procedures relating to preadmission certification and *payment for covered services* rendered to [N.P.].

(*Id.* at ¶ 38 (emphasis added)).

The allegations in Counts I-II of the Complaint place the issue of *coverage* under the ERISA plan front and center. To prevail on these claims, Lee Memorial must ultimately demonstrate that N.P. was a covered dependent and the services provided to him were covered under an ERISA-based plan. Stated another way, if N.P. was not a covered dependent under an ERISA-based plan or the services provided to him were not covered, then Lee Memorial cannot assert a right to payment under the Agreement (or its Amendments) or demonstrate that BCBSF violated the Agreement (or its Amendments) by failing to pay. The legal inquiry concerning the elements of these contract-based claims concerning the Agreement leads inevitably back to the issue of coverage under the ERISA plan. As such, the Court finds that Counts I and II necessarily implicate ERISA.

### 2.   Promissory/Equitable Estoppel (Count III) and Negligent Misrepresentation (Count IV)

In Count III, Lee Memorial asserts a claim for promissory/equitable estoppel, alleging that Defendants repeatedly represented to Lee Memorial that the services provided to N.P. were covered and the claims would be paid.  (Doc. 2 at ¶ 41).  Lee Memorial claims that it relied on these representations and suffered damages when Defendants later determined that the claims would not be paid because primary coverage was afforded under a different BCBSNJ policy for which the claim deadline had passed.  (*Id.* at ¶¶ 42-44).

In Count IV, moreover, Lee Memorial asserts a claim for negligent misrepresentation, alleging that BCBSF and BCBSNJ owed a duty to Lee Memorial to conduct a reasonable investigation into the claim for payment of services provided to N.P. and to promptly notify Lee Memorial as to any issues concerning the claim or coverage.  (*Id.* at ¶ 47).  Lee Memorial also alleges that BCBSF and BCBSNJ made false statements as to the coverage for the hospital services provided to N.P. and that these claims had been approved for payment.  (*Id.* at ¶ 48). Lee Memorial contends that Defendants knew or should have known that Lee Memorial was relying upon these representations in continuing the care for N.P. and in pursuing payments.  (*Id.* at ¶ 49).  Lee Memorial asserts that BCBSF and BCBSNJ had a duty to timely disclose the basis for the denial of coverage and failed to do so, which intentionally or negligently induced Lee Memorial to rely on these representations.  (*Id.* at ¶ 51 (emphasis added)).  As a consequence, Lee Memorial asserts that it suffered damages.  (*Id.* at ¶ 52).

The Eleventh Circuit held in *Connecticut State Dental* that "a healthcare provider's claims of negligent misrepresentation and estoppel based on a plan's oral misrepresentations are not ERISA claims because they do not arise from the plan or its terms."  591 F.3d at 1347 (citing *Franciscan Skemp*, 538 F.3d at 597).  *Connecticut State Dental* is unequivocal and controlling.

Applying the rule from *Connecticut State Dental* to this case leads to the conclusion that Lee Memorial's claims of negligent misrepresentation and estoppel allege independent legal duties apart from any ERISA plan or its terms.  Thus, *Connecticut State Dental* requires a finding that Lee Memorial's Promissory/Equitable Estoppel claim (Count III) and Negligent Misrepresentation claim (Count IV) do not implicate ERISA and are not completely preempted.

That, of course, leaves open the separate question of defensive preemption.  Although defensive preemption is an issue raised in Defendants' Motion to Dismiss (Doc. 9 at 14-16), it nevertheless makes senses to address it here because *Connecticut State Dental* similarly controls the defensive preemption analysis for Counts III-IV.  The Eleventh Circuit acknowledged in a footnote in *Connecticut State Dental* that:

> In the context of defensive preemption, this Court has similarly concluded that healthcare provider claims for negligent misrepresentation are not preempted. *Lordmann Enters., Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1533 (11th Cir. 1994); *see also Transitional Hosps. Corp. v. Blue Cross & Blue Shield of Texas, Inc.*, 164 F.3d 952, 954 (5th Cir. 1999) (noting in the context of defensive preemption that "ERISA does not preempt state law when the state-law claim is brought by an independent, third-party health care provider (such as a hospital) against an insurer for its negligent misrepresentation regarding the existence of healthcare coverage").

591 F.3d at 1347 n.7.  Based upon *Connecticut State Dental*, therefore, defensive preemption does not require dismissal of Lee Memorial's Estoppel (Count III) and Negligent Misrepresentation (Count IV) claims.  Defendants' other Rule 12(b)(6) arguments are addressed in more detail below in Part III.

### 3.	Breach of Fiduciary Duty (Count V)

In Count V, Lee Memorial alleges that BCBSF owed a fiduciary obligation of good faith and fair dealing "to act with due regard for the interest of LEE MEMORIAL as to the review of claims and the approval of payment for the treatment by LEE MEMORIAL *of individuals covered through sister Blue Cross and/or Blue Shield Plans* who were treated by LEE

MEMORIAL *as policyholders under the Agreement*."  (Doc. 2 at ¶ 55) (emphasis added).  Lee

Memorial further alleges that BCBSF breached its fiduciary duty as follows:  (1) failing to timely

authorize medical care for N.P.; (2) failing to timely process the claims for payment for N.P.'s

medical care; (3) misinforming Lee Memorial of the eligibility of N.P. to receive *covered*

*services* by Lee Memorial; (4) wrongfully refusing to pay claims for *covered services*; and (5)

"[d]*enying claims for covered services* in order to advance the financial interests of BCBSF and

BCBSNJ to the detriment of Lee Memorial."  (*Id.* at ¶ 57 (emphasis added)).  Lee Memorial

claims that BCBSF's actions were undertaken to prevent Lee Memorial from receiving timely

and sufficient payment of "*covered medical services*" and, as a result, Lee Memorial suffered

damages.  (*Id.* at ¶¶ 58-59 (emphasis added)).

       The elements of a cause of action for breach of fiduciary duty are:  (1) the existence of a

duty; (2) breach of that duty; and (3) damages flowing from the breach.  *Cassedy v. Alland Inv.*

*Corp.*, 128 So. 3d 976, 978 (Fla. 1st Dist. Ct. App. 2014).  Here, as elements of the claim for a

breach of fiduciary duty, Lee Memorial asserts, *inter alia*, that BCBSF breached its fiduciary

duty by wrongfully refusing to pay claims for *covered services* provided to N.P. and denying the

claim for *covered services* to advance their own financial interests to the detriment of Lee

Memorial.  (*See* Doc. 2 at ¶ 57(d), (e)).  The alleged obligation to pay flows directly from the

allegation of coverage under the ERISA plan.  As such, the alleged fiduciary duty is expressly

tethered to the ERISA plan.  *See Gables*, 813 F.3d at 1338.  Therefore, the Court finds that Count

V also implicates ERISA.

### 4.      Unjust Enrichment (Count VI)

       In Count VI, Lee Memorial alleges that it supplied medical care to Heather Picardi and

N.P. who were insured under a BCBSNJ policy and Defendants were obligated under Heather

Picardi's policy to provide payment for these services to Lee Memorial. (Doc. 2 at ¶¶ 62, 65, 67).[5]  Lee Memorial claims that BCBSF's contractual relationships with BCBSNJ and Lee Memorial obligated BCBSF to make its provider network available to Heather Picardi and N.P. and to administer claims arising from the treatment of both. (*Id.* at ¶ 64).  Lee Memorial asserts that it conferred benefits upon BCBSF and BCBSNJ by providing medical services to Heather Picardi and N.P. that BCBSF and BCBSNJ were required to furnish "*as a policy benefit*." (*Id.* at ¶ 65 (emphasis added)).  Lee Memorial claims that BCBSF and BCBSNJ knew and consented to the benefits being conferred, accepted and retained the benefits conferred, and Lee Memorial had a reasonable expectation of payment for these services from BCBSF and BCBSNJ. (*Id.* at ¶¶ 66-68).  Lee Memorial claims that BCBSF and BCBSNJ would be unjustly enriched if allowed to enjoy the benefits of the services provided without payment for them. (*Id.* at ¶ 69).

The elements of a claim for unjust enrichment are:  (1) plaintiff conferred a benefit on the defendant; (2) defendant voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. *Porsche Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090, 1100 (Fla. 3d Dist. Ct. App. 2014) (citing *Fito v. Attorneys' Title Ins. Fund, Inc.*, 83 So. 3d 755, 758 (Fla. 3d Dist. Ct. App. 2011)).

A careful review of the allegations in Count VI of the Complaint reveals that this claim, too, is expressly tethered to BCBSF and BCBSNJ's alleged obligations arising under the ERISA policy, including the obligations to "pay for such hospital services," (Doc. 2 at ¶ 63), to

---

[5] The unjust enrichment claim is pled in the alternative to the breach of contract claim. (Doc. 2 at ¶ 61).

"administer the claims arising from the treatment," (*id.* at ¶ 64), and to furnish medical services "as a policy benefit," (*id.* at ¶ 65).  Thus, the Court finds that Count VI implicates ERISA.

### 5.     Breach of Implied Covenants of Good Faith and Fair Dealing Against BCBSF (Count VII)

Count VII asserts a claim for Breach of Implied Covenants of Good Faith and Fair Dealing Against BCBSF.  (Doc. 2 at ¶¶ 70, 97-100).[6]  Lee Memorial asserts that the Agreement had not only written provisions but also the implied covenants of good faith, fair dealing, and commercial reasonableness.  (*Id.* at ¶ 97).  With regard to the covered services provided by Lee Memorial, Lee Memorial claims that it had contractual expectations that:  (1) BCBSF would do "nothing destructive to the right of Lee Memorial to receive timely and sufficient payment *for covered services rendered to individuals covered through health plans underwritten or administered by BCBSF and sister Blue Cross and/or Blue Shield health plans*;" and (2) BCBSF would not act "capriciously to contravene the reasonable contractual expectations of LEE MEMORIAL merely to promote BCBSF's own self-interest."  (*Id.* at ¶ 98 (emphasis added)).

Lee Memorial then lists the ways in which BCBSF acted capriciously to "contravene the reasonable contractual expectations of LEE MEMORIAL" as follows:  (1) arbitrarily denying "*medically necessary*" services to N.P.; (2) failing to keep adequate records of authorization granted by BCBSF and/or BCBSNJ *for medically necessary services* provided by Lee Memorial to N.P.; (3) failing to timely process and *pay claims* for the treatment of N.P. within a commercially reasonable time; (4) misinforming Lee Memorial of the eligibility of N.P. to receive covered services at Lee Memorial; (5) wrongfully *refusing to pay claims for covered services provided to N.P.*; and (6) *denying claims for covered services* to advance the financial

---

[6]  The enumerated paragraphs of the Complaint jump inexplicably from paragraph 70 to paragraph 97.

interests of BCBSF and BCBSNJ to the detriment of Lee Memorial.  (*Id.* at ¶ 99 (emphasis added)).  As a result of these actions, Lee Memorial claims that it sustained damages.  (*Id.* at ¶ 100).

Florida contract law recognizes an implied covenant of good faith and fair dealing in every contract.  *QBE Ins. Corp. v. Chalfonte Condo. Apt. Ass'n, Inc.*, 94 So. 3d 541, 548 (Fla. 2012) (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999); *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1438 (S.D. Fla. 1996); *County of Brevard v. Miorelli Eng'g, Inc.*, 703 So. 2d 1049, 1050 (Fla. 1997); *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1234-35 (Fla. 4th Dist. Ct. App. 2001)).  "A duty of good faith must 'relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements.'"  *Id.* (citations omitted).

As with the majority of Lee Memorial's other claims, the claim for breach of implied covenants of good faith and fair dealing is dependent upon a predicate showing that N.P. was covered under an ERISA plan and that the services provided to him were covered under the ERISA plan.  Lee Memorial alleges that BCBSF contravened its reasonable contractual expectations by denying authorization for *medically necessary services*, wrongfully refusing to pay for *covered services* provided to N.P., and denying claims for *covered services* in order to advance its own financial interests.  (*See* Doc. 2 at ¶ 99(a), (e), (f)).  These claims expressly tether the claim to the ERISA plan.  Accordingly, the Court finds that Count VII implicates ERISA.

###### C.      Conclusion as to Remand

The claims raised in Counts I-II and V-VII all concern – at least in some way – the issue of whether there was a wrongful denial of coverage under the terms of an ERISA-regulated employee benefit plan.  As to those counts, the bottom line is that Lee Memorial alleges that it was not paid for services rendered to N.P. under an ERISA-regulated healthcare plan or plans. The issues raised by these claims fundamentally involve the decisions BCBSF and BCBSNJ made concerning coverage of N.P. while he was in the care of Lee Memorial.  Because these claims meet all requirements of the *Davila* test, the Undersigned finds, therefore, that Defendants have satisfied both parts of the *Davila* test as to Counts I-II and V-VII.[7]  *Davila*, 542 U.S. at 210; s*ee also Borrero*, 610 F.3d at 1305.  Thus, the District Court has subject-matter jurisdiction over this case and the Motion for Remand (Doc. 13) is due to be denied.

As for Counts III-IV, however, they survive as state-law claims and are not converted to ERISA claims.  Moreover, "[w]here removal jurisdiction exists over a completely preempted claim, the district court has jurisdiction over any claims joined with the preempted claim." *Connecticut State Dental*, 591 F.3d at 1353.  This Court may, therefore, exercise jurisdiction over the non-preempted, state-law claims in Counts III-IV based upon the existence removal jurisdiction over the completely preempted claims in Counts I-II and V-VII.  *See id.*

### III.    Motion to Dismiss Complaint

In their Motion to Dismiss (Doc. 9), Defendants assert that this action should be dismissed because the state-law claims are completely preempted by ERISA or, in the

---

[7]  Defendants assert in a footnote that Horizon BCBS is not a party to the provider Agreement between it and Lee Memorial and, thus, remand is not required.  (Doc. 17 at n.3).  The Court determined that at least some of Lee Memorial's claims are preempted by ERISA and, therefore, the Court need not address this issue.

alternative, are defensively preempted under ERISA.  (Doc. 9 at 1).  Many of the arguments concerning preemption mirror the arguments in Defendants' Response to the Motion to Remand. Similarly, Lee Memorial asserts that the claims raised are clearly state-law claims and are not preempted by ERISA, as argued in its Motion to Remand.  (Doc. 12 at 5-9).  As stated above, the Court finds that the following claims raised, as pled, implicate ERISA and are completely preempted by ERISA:  Count I, Declaratory Relief; Count II, Breach of Contract; Count V, Breach of Fiduciary Duty; Count VI, Unjust Enrichment; and Count VII, Breach of Implied Covenants of Good Faith and Fair Dealing Against BCBSF.  Thus, the Undersigned recommends that the Motion to Dismiss be granted as to Counts I-II and V-VII, and that Lee Memorial be afforded leave to file an Amended Complaint to allege these preempted state-law claims under ERISA, if it can.

As to the claims for Promissory/Equitable Estoppel (Count III) and Negligent Misrepresentation (Count IV), however, the Court determines for the reasons set forth above that these two claims were not completely or defensively preempted by ERISA.  Thus, the Court will address Defendants' alternative arguments as to whether Lee Memorial failed to state a claim under a Federal Rule of Civil Procedure 12(b)(6) analysis.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In deciding a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all factual allegations in the Complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court must also construe the allegations in the light most favorable to the plaintiff.  *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006).  To survive a motion to dismiss, a plaintiff's complaint must

include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citations omitted). The threshold to survive a motion to dismiss is exceedingly low, however. *Twombly*, 550 U.S. at 555. A plaintiff's obligation to provide the "grounds" of his entitlement to relief requires more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

### A.   Promissory Estoppel

Defendants assert that Lee Memorial's estoppel claim is defective because: (1) Lee Memorial did not change its position based on a representation by Florida Blue and, thus, failed to show a detrimental change of position; (2) promissory estoppel is not an available remedy when there is a written agreement that addresses the relevant issues; and (3) the claims for promissory estoppel are not definite as to terms and time. (Doc. 9 at 17). Although failing to address each of these arguments specifically, Lee Memorial argues generally that it has adequately stated a claim for promissory estoppel.

To state a claim for promissory/equitable estoppel liability under Florida law, a plaintiff must allege: (1) a promise made by the promisor; (2) which the promisor should reasonably expect to induce action or forbearance on the part of the promisee; (3) that in fact induced such action or forbearance; and that (4) injustice can be avoided only by enforcement of the promise. *White Holding Co., LLC v. Martin Marietta Materials, Inc.*, 423 F. App'x 943, 947 (11th Cir. 2011) (citing *W.R. Grace & Co. v. Geodata Servs., Inc.*, 547 So. 2d 919, 924 (Fla. 1989)).

Defendants argue Lee Memorial failed to plead one of the required elements of promissory estoppel: a detrimental change in position. (Doc. 9 at 16-17). "Under Florida law, a

plaintiff is required to plead 'a change in position detrimental to the party claiming estoppel caused by the representation and reliance thereon.'" *Mangravite v. Univ. of Miami*, No. 1:10-CV-22895-JLK, 2010 WL 4702358, at *2 (S.D. Fla. Nov. 12, 2010) (quoting *Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 650 (Fla. 3d Dist. Ct. App. 2006)).   In essence, Lee Memorial must show that the action it took was not identical to the action it would have taken with or without the promise of payment.  *See Long v. Murray*, No. 609-CV-1320-ORL-19DAB, 2009 WL 4042961, at *7 (M.D. Fla. Nov. 20, 2009) (citing *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1351 (S.D. Fla. 1999), *aff'd sub nom. Eclipse Med., Inc. v. Am. Hydro-Surgical*, 235 F.3d 1344 (11th Cir. 2000) (holding that detrimental reliance was not established where the plaintiffs' actions were identical to the plaintiffs' contractual obligations and, thus, did not constitute a detrimental change in position)).   In this case, Lee Memorial alleges that Defendants promised to pay for services rendered to N.P. and Lee Memorial relied on these representations.  (Doc. 2 at ¶¶ 18-20, 42).  However, Lee Memorial fails to allege that it would not have provided these services to N.P. absent a promise to pay on the part of Defendants.  Thus, the Court finds that Lee Memorial failed to allege an element of a claim for promissory estoppel, namely a detrimental change in position.  Thus, the claim for promissory estoppel is due to be dismissed on this ground.

Even though the Court finds that the claim for promissory estoppel is due to be dismissed, the Court will address the remaining arguments in turn.  Defendants next argue that promissory estoppel is not available where there is a written agreement that addresses the relevant issues.  (Doc. 9 at 17).  Defendants claim that the ERISA plans address the subject of whether the "hospital services provided to [N.P.] [would be accepted]" for payment.  (*Id.*).  "[T]he law is clear that 'promissory estoppel is not available as a remedy when the parties have a

written contract addressing the relevant issues.'" *Mangravite v. Univ. of Miami*, 838 F. Supp. 2d 1326, 1333 (S.D. Fla. 2011) (citations omitted).  In this case, however, the Court has determined, *supra*, that the oral representations and promises made are not related to the ERISA plan or plans at issue.  Thus, this argument fails.

Lastly, Defendants claim that promissory estoppel must be "'definite as to terms and time,'" citing *W.R. Grace & Co.*, 547 So. 2d 919, 924 (Fla. 1989) and *Long v. Murray*, No. 609-CV-1320-ORL-19DAB, 2009 WL 4042961, at *6 (M.D. Fla. Nov. 20, 2009).  (Doc. 9 at 17).  Defendants argue that Lee Memorial only alleges that it provided care and it was told by someone at some time that the claims would be paid.  (Doc. 9 at 17).  The terms of the promise in a claim for promissory estoppel must be definite.  *W. Indies Network-I, LLC v. Nortel Networks, (CALA) Inc.*, 243 F. App'x 482, 485 (11th Cir. 2007).  The terms of the promise in this case are alleged to be that coverage for the entire 124 days of the hospital stay of N.P. had been approved and would be paid.  (Doc. 2 at ¶¶ 18, 41).  The Court finds that the terms of the alleged promise are sufficiently definite as alleged in that they involve the specific claims submitted to Defendants for payment as to services provided.  Thus, this argument also fails.

Based on the foregoing, the Court finds that Lee Memorial has failed to state a cause of action for promissory estoppel by failing to allege a detrimental change in position.  Thus, the claim for promissory estoppel is due to be dismissed without prejudice.

### B.    Negligent Misrepresentation

Defendants also move to dismiss the claim for negligent misrepresentation on the ground that it "sounds in fraud" and, thus, must be plead with "particularity" under Federal Rule of Civil Procedure 9(b).  (Doc. 9 at 17).  Further, Defendants argue that the claim fails because it was brought against two Defendants, BCBSF and BCBSNJ, and Lee Memorial fails to attribute the

alleged fraudulent statements to the specific Defendant allegedly involved.  (Doc. 9 at 17-18).

Lee Memorial does not address these arguments specifically, but asserts instead that it has

adequately pled the elements of negligent misrepresentation.  (Doc. 12 at 17).

> In Florida, the elements for a cause of action for negligent are:
>
> (1) the defendant made a misrepresentation of material fact that he believed to be
> true but which was in fact false; (2) the defendant was negligent in making the
> statement because he should have known the representation was false; (3) the
> defendant intended to induce the plaintiff to rely . . . on the misrepresentation; and
> (4) injury resulted to the plaintiff acting in justifiable reliance upon the
> misrepresentation.

*McGee v. JP Morgan Chase Bank, NA*, 520 F. App'x 829, 831 (11th Cir. 2013) (citing *Simon v.*

*Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th Dist. Ct. App. 2004)).  Moreover, because

negligent misrepresentation sounds in fraud, the facts supporting the claim must be plead with

particularity.  *Id.*  (citing Fed. R. Civ. P. 9(b)).  Rule 9(b) provides:  "[i]n alleging fraud or

mistake, a party must state with particularity the circumstances constituting fraud or mistake.

Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Fed. R. Civ. P. 9(b).  To comply with Rule 9(b)'s requirements, a complaint must set forth:

> (1) precisely what statements or omissions were made in which documents or oral
> representations; (2) the time and place of each such statement and the person
> responsible for making (or, in the case of omissions, not making) them; (3) the
> content of such statements and the manner in which they misled the plaintiff; and
> (4) what the defendant obtained as a consequence of the fraud.

*FindWhat Inv'r Grp. v. FindWhat.com,* 658 F.3d 1282, 1296 (11th Cir. 2011).  In this case, Lee

Memorial claims that the 124 days of hospitalization for N.P. were approved and would be paid.

(Doc. 2 at ¶¶ 18-10).  Lee Memorial alleges generally that BCBSF and BCBSNJ owed a duty to

conduct a reasonable investigation of its claim for payment, to promptly notify Lee Memorial as

to any policy defenses, coverage exclusions, or other matters affecting the ability of Lee

Memorial to ultimately receive payment for covered claims.  (*Id.* at ¶ 47).  Lee Memorial claims

that BCBSF and BCBSNJ made false statements of material fact when they represented to Lee Memorial that coverage for N.P.'s hospital services was approved.  (*Id.* at ¶ 48).  These allegations are not sufficiently precise at to time, place, or content of the representations. Further, these statements are not sufficiently precise as to which Defendant was responsible for making which representations.  Thus, Lee Memorial failed to plead its claim for negligent misrepresentation with the specificity required in Fed. R. Civ. P. 9(b).  Therefore, the Court finds that the claim for negligent misrepresentations is due to be dismissed without prejudice for lack of sufficient particularity.

**IT IS RESPECTFULLY RECOMMENDED**:

1) The Motion for Remand (Doc. 13) be **DENIED**.

2) That the Motion to Dismiss Complaint (Doc. 9) be **GRANTED** without prejudice as to Counts I, II, V, VI and VI as these claims are completely preempted by ERISA.

3) That the Motion to Dismiss Complaint (Doc. 9) be **GRANTED** without prejudice as to Count III and Count IV.

4) That Lee Memorial be permitted leave to file an Amended Complaint.

Respectfully recommended in Chambers in Ft. Myers, Florida on February 22, 2017.


_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE


## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written

objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.


Copies furnished to:
Counsel of Record
Unrepresented Parties